## WILLIAM H. BELCHER AND CHARLES BELCHER, PLAINTIFFS IN ERROR, *v.* WILLIAM A. LINN.

Where there was a controversy with respect to the amount of duties properly
payable upon an importation, the collector and importers entered into an
agreement to submit samples of the article to the board of general appraisers
to be convened at New York, and to abide by their appraisement in the same
manner and to the same extent as if it had been made by merchant appraisers,
regularly appointed according to law.

The article imported was called in the invoice "concentrated molasses," which
is syrup boiled down to a denser consistency, and thus evaporating the watery
particles, until the point of crystalization is reached.

The appraisers decided that this article was, in point of fact, a species of green
sugar, and that the invoice and entry were erroneous, not only with respect to
the value affixed to the article, but also as to its description. Green sugar
was subject to an export duty, but molasses was not. They therefore added,
as appeared by their report, a sum equal to the amount of that duty, although
none such had been paid. But the statement annexed to the report described
the addition made thus, " to add export duty on."

Held :

1. That in the absence of fraud, the decision of the appraisers as to the char-
acter of the article and the dutiable value of the importations was final
and conclusive.

2. That the report and statement must be construed together, and that by their
true construction they showed, irrespective of the parol testimony, that the ad-
dition was made, not as an export duty, but to bring up the invoice valuation
to the actual market value of the merchandise at the place of exportation.

3. That if the words "to add export duty on " were of doubtful signification,
and must be separately considered, then the case would be one where parol
testimony would be admissible, so that, in either point of view, there was no
error in the action of the Circuit Court.

4. That the importer was not entitled to recover on account of the leakage while
the merchandise was detained for the purpose of the appraisement.

5. That the assessment of duties is properly made upon the quantity of mer-
chandise entered at the custom-house.

THIS case was brought up by writ of error from the Circuit
Court of the United States for the district of Missouri.

The facts are stated in the opinion of the court.

*Belcher et al. v. Linn.*

It was argued by *Mr. Phillips*, upon a brief filed by himself and *Mr. Reverdy Johnson*, for the plaintiffs in error, and by *Mr. Stanton*, upon a brief filed by *Mr. Black* (Attorney General,) for the defendant.

*Mr. Phillips*, for the plaintiffs in error, made the following points:

By the act 3d March, 1851, (9 Stat., 630,) it is provided that the collector, in all importations subject to an *ad valorem* duty, shall cause the actual market value, or wholesale price thereof, at the place of exportation, to be appraised, and to such value or price shall be added all costs and charges, except insurance, including in every case a charge for commissions at the usual rates, as the true value at the port where the same may be entered, upon which the duties are to be assessed.

The rights of the importer are not submitted to the arbitrary exercise of power, either on the part of the collector or the appraisers, but are protected by the specific directions of the statute. If, therefore, any addition is made to the invoice not covered by its terms, it would constitute an illegal exaction, for which the defendant would have his right of action.

The board to which the appeal was taken was not one provided by law for this purpose, but, by agreement of the parties, their appraisement was to be made in "the same manner, and to the same extent, as if it had been made by merchant appraisers regularly appointed according to law."

It is shown by the evidence that the article of concentrated molasses was not subject to an export duty in Cuba, and that, in fact, the plaintiffs had paid no such duty on their exportations from Matanzas.

In their report, the board say: "The board assume that both the concentrated melado and concentrated molasses are sugar in a green state;" and they state the facts upon which this classification is made. It nowhere appears that the invoice price was not the fair market value at the place of exportation; but having determined that the concentrated molasses should be classed as sugar, they proceed, in the

words of the report itself, "to add export duty on —— pounds, at 87½ cents per 500 pounds." This was the export duty on sugar, and appears as a charge on the plaintiffs' invoices before them, properly added on all other articles than the concentrated molasses.

Whether the subject in controversy belonged to the class known as sugar, or to another, was a question to be decided alone by the Cuban authorities. It was not to be treated as a question of chemistry, but as one of political administration, and as such, the board had no jurisdiction whatever over it. If the Cuban authorities, with a full knowledge of the article, determined that it did not belong to the class of sugar, and therefore not subject to duty, the appraisers here could have no authority to revise that determination, and make it subject to a sugar duty. When, therefore, the board, acting upon the assumption that the article was to be classed as sugar, add, as a charge, an "export duty," which was not due, and never was paid, they exceeded the authority which the law confers upon appraisers.

The force of this proposition was sought to be avoided in the court below by the introduction of the evidence of one of the four appraisers who signed the award, to show that the meaning of the board was not to add an "export duty," but only such a sum as, in their opinion, would bring the article up to its market value at the place of exportation. In other words, that when they said "add for export duty 87½ cents per 500 pounds," they did not mean what the language used by them clearly imports, but something different.

This is, therefore, an attempt to contradict a solemn declaration of four persons, by the evidence of one of the number as to what was intended by them all.

If the plain meaning of the report or award could be contradicted, it is submitted, that all who made it should have been examined as to their intent.

But the rule of law is considered well settled, that no such evidence is admissible.

This extrinsic evidence was introduced, not for the purpose of applying the report to the subject-matter of the controversy,

for that fully appears in the report itself; nor of supplying any omission necessary to make it intelligible, nor to explain any doubtful word, for no such omission or doubt exists.

In the case of Van Buren v. Diggs, the contract provided that if the house was not completed at the day specified, there was to be a "forfeiture of 10 per cent. of the whole amount." The defendant sought to prove that the contractor intended this as stipulated damages; but this court held such evidence wholly inadmissible.

11 How., 463.

So in Kemble v. Lull, (3 McLean, 274,) it was offered to show what construction was intended by the parties in the use of the words "if in funds," contained in an order for the payment of money. This the court upheld as inadmissible, holding that the words were not ambiguous, and that it was the duty of the court to construe them.

So in Newland v. Douglas, (2 John. R., 62,) it was offered to show by the evidence of two of the arbitrators a mistake in the award in their subtraction of figures, but the evidence was rejected as illegal.

In the multiplicity of adjudications on this subject, the broad line of separation between simple interpretation of what is in the instrument, and direct evidence of intention independent of the instrument, has been kept steadily in view.

As the goods were detained by the collector, without fault on the part of the plaintiff, it is further contended that when the collector at New Orleans levied the duties, they should have been calculated only on such quantity as then remained in his possession. The law levies the duty upon the importer, because he is enabled to make it good from the consumer; but the importer ought not to be held responsible for duties upon goods which, though imported, by reason of the negligent or illegal acts of the Government agents, never came into his possession.

*Mr. Stanton* made the following points:

It should be remembered that the plaintiffs showed by parol testimony that, by the original appraisement at New Orleans, the

invoice valuation of their cargoes was increased one-half real per arroba, (6¼ cents per 25 pounds.). This is equivalent to $1.25 per 500 pounds. But the increased valuation made by the board of general appraisers was only 87½ cents per 500 pounds It is obvious that the alleged excess of duties ($627.41) actually paid by the plaintiffs was less than they would have been required to pay upon the New Orleans appraisement. The excess of duties which that appraisement demanded over the amount due on the invoice valuation was $896.30. Unless, therefore, the original appraisement was superseded by some regular proceeding, the plaintiffs had no right to recover.

The first inquiry, therefore, is, whether the appraisement made at New Orleans was defeated by the subsequent proceedings. The plaintiffs appealed from the appraisement made at New Orleans. This appeal was taken under the provisions of the 17th section of the act of August 30, 1842, as modified by the 3d section of the act of March 3, 1851.

9 Stat., 629.

Regularly, this appeal should have been determined by a board composed of one merchant appraiser and one of the general appraisers. By the agreement, it was submitted to the board of general appraisers. The appraisement was made at New York upon samples, when, regularly, it should have been made at New Orleans on an inspection of the cargoes.

The first question, therefore, presented on this record, is whether, by the agreement to submit the appraisement to the board of general appraisers, the appeal was abandoned.

Where the importer, after demanding an appeal, withdraws or declines to prosecute it, the original appraisement stands.

Bartlett *v.* Kane, 16 How., 263.

Neither the Secretary of the Treasury nor the collector has the power, with the consent of an importer, to submit the appraisement of goods to any other tribunal than that designated by the law.

It is clear that, without such consent on the part of the importer, the appraisement cannot be made in any other manner than that directed by acts of Congress. The collector cannot

remove a merchant appraiser at pleasure after he has been chosen.

Greely *v.* Thompson, 10 How., 225.

The appraisement must in all respects be made in conformity with the law.

Burgess *v.* Converse, 2 Curtis, 221.

It is enough to set aside an appraisement that one of the appraisers did not inspect the goods.

10 Howard, 225.

The whole current of decisions establishes the position that the mode of appraisement pointed out in the tariff acts now in force must be observed, and that the Secretary of the Treasury has no power to change it. It is a legitimate conclusion from this, that want of power in that officer to alter the regular mode of appraisement must be alike fatal to any change, whether made with the consent of the importer or not.

2. But suppose the agreement of the 28th September, 1853, to have been valid. The position taken by the plaintiffs in their protest, and by the counsel on the argument, is, that the report of the appraisers conclusively shows that the sum of $87\frac{1}{2}$ cents per 500 pounds was added to the invoice value of the sugar by the board of general appraisers, as an export duty. Let us concede, for argument's sake, this position to be correct; what is the consequence? The case, then, stands thus: The board of appraisers have decided that an export duty was, in fact, paid upon these cargoes. The plaintiffs claim the right to show before a jury that no such duty was paid. Can they do this? They certainly cannot, if the finding of that fact was within the jurisdiction of the board of appraisers.

Now it is plain, from the provisions of the act of March 3, 1851, (9 Stat., 629,) that the appraisers must not only ascertain the value of the goods, but also ascertain the charges upon them. Their business is not only to find the "actual market value or wholesale price," &c., but also to certify the dutiable value of the goods, which consists of the wholesale price of the goods added to all costs and charges. The case of Samson *v.* Peaslee, 20 How., 575, is not inconsistent with this view.

The appraised value of the goods added to the costs and charges constitutes the dutiable value, and the appraisers must ascertain both.

It was, then, the province of the board of general appraisers, under the agreement, to ascertain the charges to which these importations had been subjected. They found the fact to be, that an export duty was paid. Is not that finding conclusive? Can the plaintiffs be permitted to show that the fact was otherwise? Surely not; for it is certainly settled that the decision of the board upon a matter of fact within their jurisdiction is final.

Act of March 3, 1851, sec. 3.

16 Howard, 272.

4 Howard, 327.

Stairs et al. *v.* Peaslee, 18 How., 527.

3. But the report of the board of general appraisers does not show conclusively that the amount added as export duty to the invoice valuation was put on as a charge actually paid upon the goods; and it was proper to admit parol evidence to explain the principles upon which the addition was made.

The appraisers were not required by law to make a report. No statement of the details of their proceedings was necessary. Their certificate of the dutiable value of the goods was their appraisement.

Act of March 3, 1851, sec. 2, 9 Stat., 629.

The report in other respects is not the only legal evidence of the course of their proceedings.

The words "to add export duty" do not imply that such duty was assumed to have been paid. The evidence did not contradict the report, but explained what was obscure and ambiguous.

The following authorities seem to sustain the position that the evidence was properly admitted. An assistant appraiser proved the calculation upon which the appraisement was based, (in United States *v.* Southmayd, 9 How., 638;) evidence admitted that only one appraiser inspected the article, (10 How., 228;) to show that appraisement was made by sample, (Greely *v.* Burgess, 18 How., 413;) to show how examination of pack-

ages was made, (20 How., 574.) The principles applicable to awards are analogous. The appraisers are legislative referees.

4 How., 335.

10 How., 240.

Arbitrator may be examined concerning the grounds of his award, with his consent.

Johnson *v.* Durant, 4 Car. and Payne, 327, note.

Greenleaf's Rep., 87.

3 Espinasse, 113.

4 Espinasse, 180.

Zeigler *v.* Zeigler, 2 S. and R., 286.

In Alden *v.* Saville, 5 Taunt., 455, a reference to the arbitrator was ordered, requesting him to state upon what grounds ne gave damages.

4. In the protest, one ground of objection to the payment of the duties was, that no charge for export duty was made by the Government appraisers at New Orleans. But when an appeal is taken to merchant appraisers, the whole appraisement is open for their consideration. It is totally immaterial to them what was done by the Government appraisers.

2 Curtis, 220.

5. The duties on imports are to be assessed on the quantity of goods actually entered at the custom-house.

Marriott *v.* Brune et al., 9 How., 619.

United States *v.* Southmayd, 9 How., 637.

Lawrence *v.* Caswell, 13 How., 488.

The importation is complete when the goods are entered. The duty is imposed on the goods "imported."

Act of 1846.

The appraisement being required by law, the detention of the goods gives no cause of action. It can make no difference whether the appraisement results in maintaining the invoice valuation or in diminishing it. The legality of the appraisement does not depend upon the result. In this case, however, the defendant contends that the result shows the invoice valuation to have been too low. The value of the barrels was properly added to the invoice valuation.

*Belcher et al. v. Linn.*

Mr. Justice CLIFFORD delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the district of Missouri. The suit was commenced on the sixteenth day of September, 1854. It was an action of assumpsit, and the declaration contained a count for money had and received, together with three special counts, which are set forth at large in the transcript. Plaintiffs were merchants residing at St. Louis, in the State of Missouri, and the defendant was the surveyor of that port, appointed under the act of the second of March, 1831, upon whom, by that law, were devolved the duties of collector, and the suit was instituted by the present plaintiffs against the defendant as such collector, to recover an alleged excess of duties which they had previously paid under protest on six cargoes of merchandise invoiced, among other things, as concentrated molasses. Other causes of action were also set forth in some of the special counts, to which reference will hereafter be made. Defendant pleaded that he never undertook and promised in manner and form as the plaintiffs had declared against him, and upon that issue the parties went to trial. All of the merchandise on which the duties were exacted and paid was imported from Matanzas, in the island of Cuba, and was consigned to the plaintiffs, who were doing business at St. Louis. Under the laws of the United States, merchandise cannot be imported direct from a foreign port to the port of St. Louis, but all such importations are required to be first entered at the custom-house in New Orleans. Some brief reference to the usual course of proceeding in such cases, as required by law and the regulations of the Treasury Department, becomes indispensable, in order that the precise nature of the controversy may be fully understood. Upon the arrival at New Orleans of a vessel from a foreign port having on board merchandise exported from a foreign port, and consigned to a merchant at St. Louis, it is required, if the merchandise is subject to an import duty under the laws of the United States, that an entry of the same shall be made at the custom-house in New Orleans, in the same manner as required in case of entry for consumption, and the officers of the customs at that

port then proceed to ascertain and assess the duties to be paid to the United States, precisely in the same way as if the merchandise had been destined for that market; whereupon a bond, called a transportation bond, is given by the importer or his agent to the United States, conditioned that the packages described in the invoice, with marks corresponding thereto, shall, within a specified time, be delivered to the surveyor and acting collector of the port of St. Louis. Notice of the proceedings ought then to be given by the collector of the port where the duties were ascertained and assessed to the acting collector of the port to which the merchandise is destined; and when the packages are received at the port of destination, they are placed in the custody of the acting collector of that port, who receives the duties, giving notice of that fact to the collector of the port where they were ascertained and assessed, and the collector of the latter port is then authorized by law to cancel the transportation bond given by the importer. Six vessels arrived at New Orleans, from Matanzas, in May and June, 1853, having on board merchandise shipped from the latter port, and consigned to the plaintiffs, and it appeared that certain portions of their respective cargoes were invoiced as concentrated molasses. Pursuant to the usual course of proceedings in such cases, the plaintiffs, on the arrival of the vessels at New Orleans, made separate entries of the respective cargoes, as required by law, at the custom-house of that port, in order that the duties due to the United States might be ascertained and assessed. In making the entries, however, they followed the invoice, describing the merchandise in question as concentrated molasses, and carrying out the dutiable value accordingly, without making any addition in the entry to the cost and value of the article on account of its peculiar character. One of the entries was made on the tenth day of May, 1853, and the last two were made on the sixth day of June, in the same year. Conforming to the requirements of law, the collector of the port submitted the matter to the local appraisers to appraise, estimate, and ascertain, the dutiable value of the merchandise, and they added one-half real per arroba, equal to six and one-fourth

cents for every twenty-five pounds Spanish weight, to the invoice valuation of the merchandise. From that decision the plaintiffs appealed, and called for an appraisal of the actual value of the goods in the foreign market by merchant appraisers. They, the plaintiffs, informed the collector on the eleventh day of June, 1853, that they should appeal, and on the fourteenth day of the same month the collector notified them that the appeal was allowed, but stated that he should not appoint appraisers until he heard from the Department, as he desired the aid of a general appraiser. Considerable delay ensued; but on the 28th day of September, of the same year, the collector, acting under the instructions of the Secretary of the Treasury, and the plaintiffs, entered into a written agreement to the effect that they would substitute samples in the place of the merchandise, and submit the matters in dispute in all the cases to the determination of the board of general appraisers to be convened at the city of New York as soon as practicable, stipulating, at the same time, to abide by the appraisement of the board "in the same manner, and to the same extent, as if it had been made by merchant appraisers regularly appointed according to law." Accordingly, the general appraisers heard the several appeals, and on the nineteenth day of October, 1853, made a report in writing. Concentrated molasses constituted a portion of the cargo in five of the cases appealed, and it appeared by the report of the general appraisers that in all those cases they made an addition to the invoice value of that portion of the merchandise embraced in the entry. Of the five, it will be sufficient to give one as an example of the rest. It is as follows: "To add export duty on 522,338 lbs., at 87½ cts. per 500 lbs." Their reasons for making the addition are fully stated in their report. After stating that they had examined the samples, they say: "The board assume that both the concentrated melado and concentrated molasses are sugar in a green state, and they are borne out in this view of the case by the invoices themselves, the concentrated molasses in every case being invoiced per arroba as sugar, and not per keg as molasses; the casks are also charged as sugar casks. The concentrated molasses is

not susceptible of being guaged; which is another evidence that its proper classification is sugar."

Plaintiffs proved that the goods were assessed at New Orleans, according to that appraisement, and that they afterwards paid the duties under protest, to the defendant at St. Louis. They protested against the including in the computation of the dutiable value of the goods any sum whatever for export duty, averring in the protest that no such duty was paid by them, or demanded by the authorities at the place of exportation. Testimony was also introduced by the plaintiffs tending to show that concentrated molasses was well known in the foreign market; that it was not at that time regarded as sugar; that it was not subject to the sugar duty; that no such duty was demanded or paid; and that the invoice price represented the fair market value. Their witnesses were cross-examined by the defendant, and from the cross-examination it appeared that the plaintiffs, in 1852, set up a sugar-boiling establishment at Matanzas, and that among the products manufactured by them was the article invoiced as concentrated molasses, which it seems is melado, or syrup boiled down to a denser consistency, and is manufactured by boiling the melado, and thus evaporating the watery portions until the point of crystallization is reached. Concentrated molasses, as the witnesses state, is a recent manufacture, and was unknown in the foreign market until about the time plaintiffs commenced to produce it from their establishment. When the article first appeared, the authorities for a short time allowed it to be exported without exacting any duty; but it was soon classed with green sugars, and charged with an export duty of eighty-seven and a half cents for every twenty arrobas of twenty-five pounds Spanish weight. Like sugar, it is sold, invoiced, and valued by weight, and not by measure, like the ordinary article of molasses. On the other hand, the defendant called and examined one of the general appraisers. Among other things, he testified that—

"The board did make alterations from the invoice price or value by adding eighty-seven and a half cents for each five hundred pounds, invoice weight, and two reals or twenty-five

cents to each barrel, in order to raise the same to the actual market value, or wholesale price, at the period of exportation in the principal markets of the country from which the same had been imported.

"The sums in figures set out opposite these several entries were additions made by the board to the invoice value of the merchandise. The 87½ cents for each 500 pounds was added to make the market value of the sugars called 'concentrated molasses,' and 25 cents to each barrel was added to make the market value of the barrel.

"The term, 'to add export duty on,' was used as expressive of the principle upon which this sum was added, and not as conveying the supposition or belief that an export duty had been paid by the importers, or even that such an export duty was legally due to the Cuban Government; but it was added upon the principle that if the sum of 87½ cents per each 500 pounds was not payable for export duty, the value of the merchandise was thereby increased just that sum in the foreign market. Sugars being the basis of the appraisement, and 87½ cents per each 500 pounds being the export duty on the same, that sum was added to make the true foreign market value at the period of exportation."

To all this testimony the plaintiffs objected, but it was admitted by the court, and the plaintiffs excepted.

Thirteen points were then presented by the plaintiffs for instruction to the jury, all of which the court refused to give, and on the prayer of the defendant the jury were instructed, that "on the whole evidence the plaintiffs cannot recover." Under the rulings and instructions of the court the jury returned their verdict in favor of the defendant, and the plaintiffs excepted to the refusal of the court to instruct the jury as requested, and to the instruction given, that they, the plaintiffs, were not entitled to recover. On this branch of the case two questions are presented for decision: 1. Whether the addition was lawfully made to the invoice valuation of the merchandise described in the entry as concentrated molasses; 2. Whether the testimony of the general appraiser, as to the action of the board in making the appraisement, was properly admitted.

*Belcher et al.* v. *Linn.*

1. It is provided by the act of the third of March, 1851, to the effect that the collector, in all importations subject to an *ad valorem* duty, shall cause the actual market value or wholesale price of the importation at the period and place of exportation to be appraised, estimated, and ascertained, and to such value or price shall be added all costs and charges, except insurance, including in every case a charge for commissions at the usual rates; and by the true construction of the act, and, indeed, by its very words, that appraisement, estimation, and ascertainment, when regularly made, becomes and is the true value of the importation at the place where the same was entered, "upon which the duties shall be assessed." By the eighth section of the act of the thirteenth of July, 1846, it is also provided, that it shall be the duty of the collector, within whose district dutiable goods may be imported or entered, to cause the dutiable value of such imports to be appraised, estimated, and ascertained, in accordance with the provisions of existing laws, and if the appraised value thereof shall exceed ten per cent. or more the value declared on the entry, then, in addition to the duties imposed by law on the same, there shall be levied, collected, and paid, a duty of twenty per centum *ad valorem* on such appraised value. But a proviso is added, that under no circumstances, shall the duty be assessed upon an amount less than the invoice value; any law of Congress to the contrary, notwithstanding. Importers are required to make an entry of their respective importations, which should always be accompanied by the invoice; and when the invoice is received, the packages for appraisement are designated on the invoice by the collector, who orders one in ten of them to the public store for the purposes of the appraisal. Examination of the selected packages is then made by the local appraisers; and if, in their opinion, the invoice value is too low, they increase it, and notify their doings to the collector, and if no appeal is taken from their appraisement by the importer, their decision in the premises is final and conclusive as to the dutiable value of the importation. Every importer, however, under those circumstances, has the right to appeal to merchant appraisers,

Merchant appraisers formerly consisted of two merchants, one chosen by the importer and one by the collector; but, under existing provisions of law, the collector may select a Government appraiser, so that in the larger ports the board usually consists of a merchant selected by the importer, and a permanent appraiser selected by the collector. 9 Stat. at Large, 630. On the appeal, the merchant appraisers, so called, examine the packages ordered to the public store, appraise, estimate, and ascertain, the actual market value or wholesale value thereof, at the period of exportation to the United States, in the principal markets of the country from which the goods were imported, and certify the value so appraised, estimated, and ascertained, to the collector; and in the absence of fraud, their decision is final and conclusive, and their appraisement in contemplation of law becomes, for the purposes of calculating and assessing the duties due to the United States, the true dutiable value of the importation. Act August 30, 1842, sec. 17, 5 Stat. at Large, 564; appraisement act, March 3, 1851, sec. 1, 9 Stat. at Large, 631. As was said by this court, in Bartlett *v.* Kane, 16 How., 272, the appraisers are appointed with powers, by all reasonable ways and means, to appraise, estimate, and ascertain, the true and actual market value and wholesale price of the importation. The exercise of these powers involves knowledge, judgment, and discretion. We hold, as was held in that case, that when power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are in general binding and valid as to the subject-matter. The only questions which can arise between an individual and the public, or any person, denying their validity, are power in the officer and fraud in the party. All other questions are settled by the decision made or the act done by the tribunal or officer, whether executive, legislative, judicial, or special, unless an appeal or other revision is provided for by some appellate or supervisory tribunal prescribed by law. United States *v.* Arredondo, 6 Pet., 691; Rankin *v.* Hoyt, 4 How., 327; Stairs *v.* Peaslee, 18 How., 524. One of the questions presented in the case last cited was, whether, in

estimating the dutiable value of a certain article called cutch, the appraisers should have taken the value at the market of Calcutta, or London and Liverpool, or Halifax, at the period of exportation from the latter port; and the Chief Justice, speaking for the whole court, held, that in estimating the value of the cutch, it was the duty of the appraiser to determine what were the principal markets of the country from which it was exported into the United States, and that their decision that London and Liverpool were the principal markets for the article was conclusive. Applying these principles to the present case, it follows, we think, wholly irrespective of the parol testimony, that the value of the importations certified to the collector constituted the true and actual dutiable value of the merchandise embraced in the respective entries made by the importers, and there is nothing in the statement accompanying the report, when considered in connection with the report itself, that is in any manner inconsistent with the view here taken as to the legal effect of their action in the premises. On the contrary, it is difficult to misconstrue their report. They determine, in the first place, that the article described in the invoice and entry as concentrated molasses was in point of fact a species of green sugar, and that the invoice and entry were erroneous, not only with respect to the value affixed to the article, but also as to its description. Payment of duties cannot be avoided because the importation is misdescribed either in the invoice or the entry, or in both, at the same time. Appraisers are required to appraise, estimate, and ascertain, the true market value of the importation, no matter what name may be affixed to it by the importer, and he cannot be benefited in the estimation of the duties here by the fact that, by accident or otherwise, he succeeded in exporting the packages from the foreign country without being subjected to the usual and lawful exactions there imposed. New manufactures naturally and constantly give rise to new questions in regard to revenue; but it cannot operate to benefit the plaintiffs in this controversy, that the subordinate authorities, at the place of exportation, were for a time misled or deceived as to the real character of the product in question, or that they

mistook the true nature of their duty. Green sugar was sub-
ject to the export duty, but molasses was not; still, if the im-
portations in question ought in fact to have been classed with
the former, then it is clear that the importer, as matter of
legal obligation, ought to have paid the export duty, and the
determination of the appraisers was not an unreasonable one;
that it was necessary to add a sum to the invoice valuation
equal to the export duty to which it would have been subject-
ed, if it had been correctly invoiced, in order to bring the
dutiable value up to the actual market value or wholesale
price in the foreign market. Both the report and the state-
ment annexed to it must be taken *in pari materia,* and consid-
ered together; and when so construed, they do not appear to
differ in any respect from the explanations given of them in
the testimony of the general appraiser. Without regard to
that testimony, it is not possible to hold that the board added
the export duty to the several importations, regarding the article
as molasses, because they expressly state in the outset that they
assume that concentrated molasses is sugar in a green state, and
proceed to give their reasons for the conclusion, deducing the
reasons given from the various invoices, which, as they affirm,
bear them out in that view of the case. It is clear, therefore,
that the appraisers did not add the eighty-seven and a half
cents to the invoice valuation as an export duty on molasses,
and it is conceded that sugar in a green state was by law sub-
ject to the export duty; so that putting the parol testimony
in question out of the case, still the plaintiffs are not entitled
to recover.

2. But suppose it to be otherwise, and that the words, "to
add export duty on," as contained in the statement annexed
to the report, are to be separately considered; still, it is diffi-
cult to see how the admission can be of any service to the
plaintiffs. They must still maintain that the importations
were in fact molasses, and that the export duty was added by
the appraisers to the invoice valuation of molasses, as such,
else they have no standing in court, for they do not deny that
if the produce in question was really sugar in a green state,
that it was competent for the appraisers to correct the misde-

scription in the invoice and entry, or disregard it, so as to perform their duty as required by law. Unless they have that right, then the grossest frauds may be committed by an importer with perfect impunity; and if they have that right, as clearly they must, then it follows that any dispute as to the nature of the produce imported, and its consequent classification in the invoice and entry, were questions of fact within the jurisdiction of the appraisers, and their decision is final and conclusive. On the other hand, if it be admitted that the words "to add export duty on" are ambiguous and of doubtful signification, then the case would be one where parol testimony would be admissible to explain the ambiguity, by showing what was done by the appraisers, and the manner in which the value of the importations was appraised, estimated, and ascertained. U. S. *v.* Southmayd, 9 How., 638; Greeley *v.* Thompson et al., 10 How., 228; Greeley *v.* Burgess, 18 How., 413; Samson *v.* Peaslee, 20 How., 574; Rankin et al. *v.* Hoyt, 4 How., 335.

3. Plaintiffs also claimed in some of the counts of the declaration to recover back certain duties alleged to have been illegally exacted of them by the defendant, on certain barrels exported empty by them from the United States to Matanzas, and brought back filled with concentrated molasses. That claim, however, is not pressed in the case, because the same claim is embraced in another case, which is also before the court.

4. Another claim is to recover damage on account of the delay which ensued in completing the appraisement, and the consequent leakage and loss of the concentrated molasses; but we are not able to see any just ground for the claim, on the facts disclosed in the record. Appraisement of the goods is required by law, and as the detention of the goods is the necessary consequence of that requirement, it cannot be held, under the circumstances of this case, that it affords any ground of action against the defendant. Duties are required by law to be assessed on the goods, and the assessment is uniformly made on the quantity entered at the custom-house, without any allowance whatever for ordinary leakage and deteriora-

tion. Marriott *v.* Brune et al., 9 How., 619; Lawrence *v.* Caswell, 13 How., 438. For these reasons we are of the opinion that there is no error in the record, and the judgment of the Circuit Court is therefore affirmed, with costs.