MARTIN MOWER, Jr., *et als.*, Appellants, *vs.* HANFORD, THAYER & Co., *et als.*, Respondents.

### APPEAL FROM THE DISTRICT COURT OF WASHINGTON COUNTY.

Upon an appeal from a judgment, the Court may review an order refusing a new trial, made upon motion and case settled.

If the case is not properly a part of the record in the Supreme Court, a motion should be made to strike the same from the record; not to dismiss the appeal. If the record improperly presents matters prejudicial to either party, it may be corrected on cause shown.

In an action by creditors to set aside certain deeds of conveyance by the debtors to a third party, upon the ground of fraud, the Plaintiffs offered in evidence a certain deed of assignment for the benefit of creditors, executed by the debtors on the date of the deeds, charged to be fraudulent, and also a judgment roll in an action in which certain other creditors of the assignor were Plaintiffs, and the said debtors and their assignee were Defendants, wherein a jury had found said deed of assignment was made with intent to defraud the creditors of said assignors. *Held* that this evidence was inadmissible for the purpose of evidencing the intent with which the deeds, sought to be set aside, were executed, the adjudication in the judgment roll being not only with reference to a different subject matter, but between different parties.

A clause in an assignment for the benefit of creditors, authorizing the assignee to sell upon credit, is held to avoid the assignment as a matter of law, although not inconsistent with an actual honest intention on the part of the assignor.

Insolvency, concealment of property, appropriating the same to the debtor's own use, and the like circumstances, may be relevant and material evidence to the issue of fraudulent intent, at the time of the execution of certain conveyances to third parties, contemporaneous with a general assignment of property for the benefit of creditors. So, the opposite of these conditions and acts, such as the application of the assignors' available means in discharge of their just debts, or a considerable time previous and up to the very time of the conveyances complained of, may have a tendency to show good faith, and are proper circumstances for the jury to consider in forming their judgment of the intent of the transaction.

Where several deeds of conveyance to different parties, and a deed of assignment to another party, were in process of preparation at the same time, and executed upon the same day, there is no conclusion of law that the deeds were all one act, and part of the same transaction. It was a question of fact for the jury. And, where such conveyances were executed by two Defendants, who were co partners, and the Court charged the jury, that if they found that if either of the Defendants in making any one of the deeds, intended to hinder, delay or defraud the creditors of the firm, then all the deeds were void as to such creditors.—*Held* to be error.

In this action, (brought to set aside certain deeds as fraudulent,) the complaint prayed that the grantee in the deeds be adjudged a trustee of the value of the lands conveyed to him, as the same were at the date of the deeds, and to pay the amount of the same to such person as the Court might appoint. After verdict, and before judgment, and pending a stay of Plaintiffs' proceedings, they obtained an order for Defendants to show cause why certain logs alleged to have been cut by the grantee on these lands, the previous winter, should not be delivered to the Sheriff of the County of Washington, to be by him sold and converted into money, and the proceeds brought into Court, &c. Upon the hearing this order was made absolute. *Held*, that the grantee being treated in the complaint as trustee of the property, the Court could not, of its own motion, or upon the mere request of the Plaintiffs, have taken the property from the trustee and placed it in the hands of the Sheriff. If he had been appointed as trustee under the prayer in the complaint, he would have been entitled to receive the rents, issues and profits of the lands, or even to sell the same, holding the proceeds for the Plaintiffs' benefit. He would be subject however to the order of the Court, and might be removed or restrained for any abuse or improper exercise of the trust reposed in him, or when it is shown that the trust fund is likely to be misapplied or lost in his hands.

This is an action brought by Hanford, Thayer, & Co., and Berthold, Rozier & Co., judgment creditors of Burkleo and

Mower, two of Appellants in this action, to set aside certain conveyances of real estate executed by Samuel Burkleo and wife and William H. Mower and wife—and by Samuel Burkleo and wife separately—and by William H. Mower and wife separately,—to Martin Mower, Jr., executed on the 12th and 13th November, 1857, a portion of which real estate is situate in the State of Wisconsin, and another portion situate in the State of Minnesota, on the ground of fraud between the grantors and grantee ; and also a deed executed by Samuel Burkleo and wife to Defendant Parker. Burkleo & Mower and Martin Mower, Jr., appear and answer, and Theodore E. Parker does not answer.

The complaint in this action charges,

1. Partnership of Plaintiffs, Hanford, Thayer & Co.

2. Partnership of Berthold, Rozier & Co.

3. Partnership of Defendants Burkleo & Mower.

4. Indebtedness of Burkleo & Mower to Plaintiffs Hanford, Thayer & Co., on and prior to 13th November, 1857, in all amounting to sum of $20,000 and more, on account of demands contracted by Burkleo & Mower in the course of their partnership business.

5. Notice of such indebtedness to Defendants Martin Mower and Theodore E. Parker, before and on the 12th November, 1857.

That all the Defendants on 12th November, 1857, did combine and collude together with a view to protect the property of Burkleo & Mower from the payment of debts, and with intent to defraud Plaintiffs, did together wickedly and faudulently contrive to place such property beyond reach of creditors.

7. That on 12th November, 1857, the said Samuel Burkleo and William H. Mower jointly, and the said Burkleo and Wm. H. Mower separately, did own certain real estate, situate a part in Wisconsin and a part in Minnesota.

8. That on the 12th and 13th November, 1857, the Defendants Samuel Burkleo and wife and William H. Mower and wife jointly, and the said Burkleo separately, and the said William H. Mower also separately, fraudulently and covenously made and executed under their hands and seals, ac-

knowledged and delivered to the Defendant Martin Mower, nine certain deeds conveying said lands, a portion of said deeds conveying lands in the State of Wisconsin only, and a part lands situated in Minnesota, and thereby conveyed said lands to Defendant Martin Mower, Jr. That said lands were of the aggregate value of $12.468.

9. That said deeds and each of them were not founded on a valuable consideration ; and before and on 12th November, 1857, Defendant Martin Mower had notice of the fraudulent intent of said Burkleo & Mower, and received the same to aid and assist said Burkleo & Mower in hindering and delaying their creditors, &c.

10. That on or about 13th November, 1857, concurrently with the making said deeds, and as part of same transaction and with like intent, said Burkleo & Mower conveyed away, covered up and placed beyond the reach of execution all other, their and each of their leviable real and personal property, by deeds of conveyance, mortgage deeds, deeds of assignment, bills of sale, and other conveyances by them fraudulently and covenously made.

11. That Defendants have resided in the County of Washington since 1st May, 1854.

12. That Plaintiffs Hanford, Thayer & Co., on 13th November, 1857, were creditors of Defendants Burkleo & Mower, in about $2,000, then and yet due.

13. That on the 19th February, 1858, the said Hanford, Thayer & Co. commenced an action in the District Court for Washington county against Burkleo & Mower to recover said indebtedness.

14. That on the 4th May, 1858, a judgment was rendered and docketed in said Court in said County, for $2,138.89, damages and costs.

15. That on 29th May, 1858, an execution was issued upon said judgment to the Sheriff of said county and delivered to him and returned by said Sheriff on 24th July, 1858, no property found.

16. That on 4th September, 1858, said judgment was docketed in Chisago county.

17. That before and on 12th November, 1857, Tillman, Ro-

zier & Co., were, and until January, 1858, continued to be creditors of Burkleo & Mower in the sum of $4,000, then and yet due. That in said January, 1858, the said debts and indebtedness were transferred by said firm of Tillman, Rozier & Co., for value, to the Plaintiffs Berthold, Rozier & Co., so that on or about the month of January, 1858, said Berthold, Rozier & Co. were, and since have been creditors of Burkleo & Mower, in sum of $4,000, then and yet due.

18. That on 7th July, 1858, said Berthold, Rozier & Co. commenced an action in the District Court of Washington county, to recover upon said indebtedness, and judgment was rendered against Burkleo & Mower, and docketed in said county on the 14th August, 1858, for $4,243.18.

19. An execution was issued thereon to Sheriff of Washington county, and delivered on 9th September, 1859, and returned no goods, 11th November, 1859.

20. That said judgments have not been paid and Defendants Burkleo & Mower have not, since 4th May, 1858, had any property out of which any part thereof could be made and unless Plaintiffs can get the lands embraced in the deeds, they will lose their said debts.

21. And Plaintiffs demand relief, that the deeds to Martin Mower of lands situate in Wisconsin be adjudged fraudulent as against Plaintiffs, that Martin Mower be adjudged a trustee for said creditors to the value of said lands, and pay the amount thereof to a receiver, &c.

22. That the deeds to Mower of lands in Minnesota be declared fraudulent, and Defendant be required to convey to receiver &c., and for injunction, and for a receiver, &c.

The Defendants Burkleo & Mower answer separately and deny each and every allegation.

The Defendant Martin Mower answers separately, and denies each and every allegation except the ownership of lands, and that conveyances were executed to him at the days charged, of the lands described in the complaint, and avers, that said conveyances were executed in good faith and without notice of any fraud or fraudulent intent on part of grantors, and were founded upon a good and sufficient consideration, which is specifically set out.

Upon which issue was made by reply, and on trial verdict and judgment rendered for Plaintiffs.

Points and Authorities of Respondents.

I.—The Defendants having moved in the Court below for a new trial, they cannot now have the same matters determined here on an appeal from the judgment. The Defendants should elect between the appeal from the judgment, and the appeal from the order denying a new trial. And so far as the appeal is from the judgment it should be dismissed.

II.—The order dated May 25th, requiring certain pine saw logs to be delivered to the Sheriff of Washington county, is not an appealable order; as to *it*, this Court has no jurisdiction, and the appeal as to that order should be dismissed.

III.—The grievance complained of by the Plaintiffs is a conspiracy and combination by the Defendants to defraud the Plaintiffs, and a conveyance to the Defendants Parker and M. Mower, by the judgment debtors Burkleo & Mower, of all their joint and several real property in pursuance of the common object and purpose to defraud.

IV.—The particular relief sought in this action is to have adjudged fraudulent *ten separate* deeds made in execution of the common purpose; and these deeds, though some of them are joint and others several, are all to the same grantee, M. Mower, except one to Parker, and are each parcel of one act in which all participated; a disposition by the judgment debtors of all their property to defraud their creditors.

The gravamen of the action is the fraud, the fraudulent disposition of the property of the judgment debtors, in which fraud all the Defendants participated. It was in reality one act in which there were many actors. *Story's Eq. Pleadings, sec.* 285 *a and* 286, *and* 530 *to* 541.

V.—The deeds, though separate, being each executed in furtherance of the common design, stand no better than if all the conveyances had been made by a single instrument; and if the combination and intent to defraud is found, then the deeds must all fall together.

VI.—Evidence of the conspiracy having been given upon

the trial, the individual act of either conspirator while engaged in the common object, was evidence against all of the co-conspirators.

VII.—The Defendant Parker appeared but did not answer; The Defendants Burkleo and Mower put in for answer a general denial. The Defendant M. Mower, Jr., denies the combination, and the fraudulent intent of the grantors, and pleads that the conveyances to him were founded upon a sufficient consideration. The Defendant M. Mower, Jr., is *not* upon the record claiming as a purchaser for value, either without or with notice of the fraud intended.

VIII.—The Defendant M. Mower, Jr., not being or claiming to be a purchaser for value without notice, neither his innocence or want of notice could make any difference; they were each wholly immaterial. The *intent* with which the conveyances were made was the only material enquiry.

A creditor who takes from his debtor a conveyance of property in payment of his debt, is not a purchaser for a valuable consideration within the meaning of the statute. *Willard's Equity*, 250, *et seq.*

IX.—The large joint indebtedness shown of Burkleo & Mower, and their joint and separate deeds to the same grantee, were sufficient evidence of a joint and common purpose to warrant the Court in admitting testimony of concurrent acts of either of the grantors in evidence of the common purpose. 1 *Am. Lead. Cas.*, 41 ; *Walcott vs. Alung*, 6 *McLean*, 23.

X.—The Defendants being properly sued jointly, and it being one trial against all the Defendants appearing, and all the deeds being defended, whatever was proper evidence as to either of the deeds or as to either of the Defendants answering, was admissible, and if any such testimony was not good against one Defendant, such Defendant must relieve himself from it by way of charge to the jury ; the evidence could not be excluded. *Black vs. Foster et al.*, 28 *Barb.*, 387; *Palmer vs. Severance*, 9 *Ala.*, 751; *Falkner vs. Leith*, 15 *Ala.*, 9.

XI.—The deed from Burkleo and wife to Register was a concurrent act of the Defendant Burkleo, and was evidence of the intent with which he was acting ; the title to the prem-

ises embraced in this deed was not in controversy; the deeds show the *mind* of the grantor; the *actual* ownership of the premises was immaterial. *Black vs. White*, 13 *N. H.*, 267.

XII.—The judgment roll wherein the deed of assignment was adjudged fraudulent, was properly admitted in evidence; the proceeding in that action was *in rem.*, and the adjudication was upon the deed, and whether the judgment was conclusive or not, it was some evidence, and evidence against some of the Defendants. The deed of assignment was certainly admissible and was already in evidence, and whether the roll was admissible or not, the deed was *conclusively fraudulent* and void upon its face; and so the Defendants were not and could not in any event be hurt by the admission of the roll. *Lord vs. Chadbourne*, 42 *Maine*, 429; *Woodruff vs. Taylor*, 20 *Vt.*, 65.

XIII.—It was entirely competent for the Plaintiffs upon the trial to show in evidence of the intent, that concurrently with the execution of the deeds, the judgment debtors otherwise conveyed all other their property.

XIV.—The bill of sale from Mower, Elliot & Co. to Register, shows the *mind* of the parties; it shows the estimated quantity and an agreed price; the *actual* quantity, situation, or value, afterward ascertained or existing at the time, was entirely immaterial.

XV.—The fact that several days prior to the making of the deeds, Burkleo & Mower had settled with one of their creditors, and had paid some of their debts, could not tend to show that by the execution of these deeds they did not intend to defraud those whom they still owed.

XVI.—The Court below did *not* err in charging the jury. The charge was predicated upon the particular facts and circumstances of the case.

XVII.—In nothing was there error against the Defendants or any of them either at the trial, in the judgment or in the order of May 25th, requiring the delivery of property to Sheriff.

L. E. Thompson, and J. B. Brisbin, Counsel for Appellants.

D. Cooper, and W. H. Burt, Counsel for Respondents.

*By the Court*—ATWATER, J.—The counsel for the Respondents contends that this Court has no jurisdiction as to the order of May 25th, directing the delivery of certain personal property, and the order refusing a new trial, on the ground that the appeals from those orders are not in time. In the view taken of the appeal from the judgment, it is unnecessary to decide whether those orders fall within the *25th section, Comp. Stats., p.* 673.

It is further contended that on appeal from the judgment, this Court cannot review the order refusing a new trial. The motion for a new trial was heard on a case settled, and which is sent up as a part of the record from the Court below. *Sec.* 7 *of chap.* 71, *p.* 621 *Comp. Stats.* provides that, " upon an appeal from a judgment, the Court may review any intermediate order, involving the merits, and necessarily affecting the judgment." The Defendant, it is true, might have appealed from the order refusing a new trial, before entry of judgment. But we do not think that he is compelled to this directly, in order to have that order reviewed. I think the order falls within the definition of those reviewable by *sec.* 7, above cited, and if the record in this Court presents all the facts, so that this Court can determine whether the Judge below erred in his rulings, I see no objection to examining the question on an appeal from the judgment. If the case is not properly a part of the record, the motion should be to strike the same from the record, and not to dismiss the appeal. This Court, on appeal from the judgment, will examine the errors as shown by the record, and if the same improperly presents matters prejudicial to either party, it may be corrected on cause shown. We do not mean to state, however, that such motion would have been proper in this case. The case appears to have been duly settled and filed, and no objection is made that it is in any respect incorrect in point of fact, and if there has been an irregularity in filing it with the judgment roll, it is rather an error in form than substance.

The order of the 25th of May, we think, may also be reviewed on the appeal from the judgment, as it involves the merits, (*St. John vs. West*, 4 *How.*, 332,) and also affects the

judgment, since the proceeds of the logs constitute a prrt of the judgment debt, and are to be paid over to the Plaintiffs as creditors of the Defendants (*Jaques vs. Meth. Ep. Church,* 17 *John.,* 559.)

The trial of the case was lengthy, and a great number of exceptions are presented by the case, which disclose several errors in the ruling of the Judge who tried the cause. It is deemed unnecessary to examine them in detail, but only some three or four of those deemed most material.

The deeds executed by the Defendants, which this action is brought to avoid on the ground of fraud, were made November 13th, 1857. Upon the trial of the cause, the Plaintiffs offered in evidence a record of a deed of general assignment from Samuel Burkleo and William H. Mower, to Samuel M. Register, dated November 13th, 1857, conveying certain personal property to Register in trust, for the payment of their debts. This was received under objection. The Plaintiffs then offered in evidence a judgment roll or record of the District Court, in an action wherein Whitney, Fenno & Co., judgment creditors of Burkleo & Mower, are Plaintiffs, and against Samuel Burkleo and William H. Mower, partners, as Burkleo & Mower and Samuel M. Register, Defendants, dated July 28th, 1859, wherein a jury found said deed of assignment was made with intent to defraud the creditors of Burkleo & Mower. This testimony was offered for the purpose, as stated by Plaintiff's counsel, of evidencing the intent with which the deeds specified in the complaint were executed. This evidence was received under objection.

This evidence was clearly inadmissible. The adjudication in that suit was not only with reference to different subject matter, but between different parties. 4 *Cow. and Hill on Phil. Ev., p.* 2, *and cases cited.* I am not aware that this Court has held that an assignment in form, such as was offered in evidence, is void upon its face, and even were such the case, it would not necessarily show a fraudulent intent in fact, although held fraudulent in law. A clause in an assignment authorizing the assignee to sell upon credit, is held to avoid the assignment as a matter of law, although not inconsistent with an actual honest intention on the part of the assignor.

If this evidence was admissible at all, it was conclusive against the Defendants, and in any event, taken in connection with the charge, must have been prejudicial to the Defendants.

The Plaintiffs also offered in evidence a bill of sale of certain logs, dated 12th November, 1857, executed by Mower, Elliott & Co. to Samuel M. Register, which was received under objection. The object of this testimony does not clearly appear from the offer, but we are led to infer it was also offered as evidence of the fraudulent intent of the Defendants, in which case we think it was improperly received.

The Plaintiffs, in establishing their case, introduced evidence showing a large indebtedness of the Defendants at the time of executing the deeds mentioned in the complaint, and proving, or tending to prove, their insolvency at that time. The Defendants, on their part, offered to show that, down to the very eve of the transactions complained of, the firm of Burkleo & Mower were paying off and discharging the indebtedness existing, and that within two months anterior to that date, they had paid off debts to the amount of $15,000, and that said payments were made from day to day during the period mentioned, and as fast as moneys could be realized from the assets and sale of the property. This and other evidence to the same end, was rejected by the Court.

Insolvency, concealment of property, appropriating the same to the debtor's own use, and the like circumstances, may be relevant and material evidence to the issue of fraudulent intent, at the time of the execution of these conveyances. So the opposite of these conditions and acts may have some tendency to show good faith in the debtor. If the Defendants could show that they were applying their available means in discharge of their just liabilities, for a considerable time previous and up to the very time of the conveyances complained of, it would be a circumstance entirely proper for the jury to consider, in forming their judgment of the intent of the transaction. Upon an issue of this kind, it is usually by circumstantial evidence only that the guilt or innocence of a party is established. A party contemplating or having committed a fraudulent act, does not usually acknowledge the fact in

words, nor is he allowed to exculpate himself, by testifying that he did not intend fraud. The Plaintiffs adduce such circumstances as they may be able, from which they ask the jury to infer fraud. The Defendant, on the other hand, should be permitted to rebut these circumstances by proving the opposite, or a state of facts inconsistent with a fraudulent intent. Such evidence certainly would not be conclusive, as a debtor might act honestly toward one creditor or set of creditors, and fraudulently towards another; but it is evidence fit in itself for a jury to consider, and the Court erred in holding it entirely irrelevant and immaterial.

The Court charged the jury, among other things, " that if the jury find from the evidence that any one of the several deeds specified in the complaint was made with the intent to hinder, delay, or defraud the creditors of Defendants Burkleo & Mower, then the whole are void as to such creditors, if one transaction." To which Defendants excepted.

This charge, standing alone, as an abstract proposition, might, perhaps, not be objectionable, though considered with reference to the evidence admitted on the deed of assignment, and the ruling of the Court on that deed, virtually left but one point for the jury to decide, to wit : whether the making of the deeds was one transaction. But the Court proceeded further to charge, " that if the jury find that the several deeds of conveyance, specified in the complaint, and the deed of assignment in evidence, were in process of preparation at the same time, and executed upon the same day, that then the whole constitute but one act, and are part and parcel of the same transaction."

The deeds included within the terms of this charge were eleven in number, and to three different parties as grantees, some from Burkleo & Mower, jointly, as grantors, and some from them severally. The proof showed them to have been executed or acknowledged upon the same day, November 13th, 1857.

We think the Judge was clearly in error, in the charge last above quoted. There is no conclusion of law from the facts above stated, that the deeds were all one act, and part of the same transaction. That was a question of fact solely for the

jury, and it was error for the Court to take it from their consideration. It certainly is not impossible that an individual should not only execute upon the same day, but be preparing at the same time a conveyance for the purpose of defrauding his creditors, and another for the purpose of securing an honest debt. In such case, the two acts could not properly be said to be of " the same transaction," the object and end of the one being entirely different from the other. However strong the probabilities may be in favor of the view entertained by the Court, the jury must be the only judges of the fact, and save for the ruling of the Court, they might have found one or more of the deeds not fraudulent.

The Court further charged, " that if the jury find from the evidence, that if either Samuel Burkleo or William H. Mower, in making any one of the deeds specified in the complaint, intended to hinder, delay or defraud the creditors of the Defendants, Burkleo & Mower, then all the deeds are void as to such creditors." This charge, standing as it does, as an abstract proposition, is also erroneous. It was in substance telling the jury that if they found that one of the Defendants executed a deed with fraudulent intent, that the law conclusively presumed that the other Defendant executed those made by him with the like intent. There is no such presumption in law, and the charge was calculated to mislead the jury. And the effect of the whole charge was to take the main question litigated, that of fraudulent intent, from the consideration of the jury, to whom it solely belonged.

The complaint prayed that Martin Mower be adjudged a trustee of the value of lands conveyed to him, which were situated in the State of Wisconsin, as the same were at the date of the conveyances, and to pay the amount of the same to such person as the Court might appoint, &c. Upon the 19th of April, 1861, after verdict and before judgment, and pending a stay of Plaintiffs' proceedings, the Plaintiffs obtained an order for the Defendants to show cause why certain saw-logs, alleged to have been cut by Martin Mower on the Wisconsin lands, the previous winter, and then being in the State of Wisconsin, should not be delivered to the sheriff of the county of Washington, to be by such officer sold and con-

verted into money, and the proceeds brought into Court, to abide the event of the action, &c.   Upon the hearing of the same the order was made absolute, and it was ordered that the timber be delivered into the custody of the Court, and be disposed of under the order of the Court, and the proceeds brought into Court to abide the event of the action.

At the time this order was made the title of the lands was in the Defendant, Martin Mower, and indeed, it does not appear from the complaint that it was sought to divest him of the legal title, by the judgment of the Court, but that he should hold the same as trustee for the Plaintiffs.   Had the judgment of the Court been pronounced in accordance with the prayer of the complaint, Mower would have been declared trustee, for the purposes named in the complaint.   Had he occupied such position, and been duly appointed trustee, (and this view of the case is most favorable to the Plaintiffs,) it will not be contended that the Court could, of its own motion, without due cause shown, or upon the mere request of the Plaintiffs, have taken the property from the trustee and placed it in the hands of the sheriff.   The Defendants have an interest in the appointment of the trustee, and in the manner of the discharge of his duties, and he does not act as the agent of the Plaintiffs only.   Mower, appointed as trustee under the prayer of the complaint, would have held not only the legal title of the lands, but would have been entitled to receive the rents, issues and profits of the same, or even to sell the same, holding the proceeds for the benefit of the Plaintiffs.   He is, of course, subject to the order of the Court, and may be removed or restrained for any abuse or improper exercise of the trust reposed in him, or when it is shown that the trust fund is likely to be misapplied or lost in his hands.

We think the affidavits on which the order was made entirely fail to show any abuse or improper use of the power of the proposed trustee, or any legal evidence that the trust fund was in danger in his hands.   It appears from the affidavits that Martin Mower had cut, during the previous winter, a considerable quantity of logs from the lands conveyed to him, and claimed by Plaintiffs, but as it would seem that he was not deprived of the power to receive the avails of the land, he

would not be transcending his right in so doing; and as the complaint asked that he might be adjudged to pay the value of these lands as they were in 1857, to the Plaintiffs, for aught that appears to the contrary, he might be pursuing the very course to enable him to comply with such order. No charge is made that he was acting in fraud of the Plaintiffs' rights, or that he was proposing to remove the property beyond the reach of the Court, or convert the same to his own use. The property was in fact at the time without the jurisdiction of the Court, to wit, in the State of Wisconsin, while the affidavits show that " the logs are now in Apple river, in said county of Polk, and being driven and running into the river and lake St. Croix, in said county of Washington." There is no allegation whatever that the Defendant was about to sell or dispose of the same; and so far as appears from the affidavits the Defendant was engaged only in removing property to within the jurisdiction of the Court, over which before it had no control. So far as the acts of the Defendant, therefore, are concerned, I do not think the affidavits disclose any facts justifying the interference of the Court.

With reference to the insecurity of the property in the Defendant's hands, the affidavits are equally defective. All that appears on that subject is contained in the affidavit of W. H. Burt, Esq., and is in the following language, viz : "And that deponent knows much of the pecuniary circumstances of the said Mower, and that in the judgment of this deponent the said Mower is not of such pecuniary condition as to leave secure the rights and interests of the Plaintiffs in said action, if the said Mower is permitted to keep, remove, and convert to his own use the said timber." It is not stated or claimed that Mower was insolvent, or approaching insolvency, or that he had incurred any liabilities whatever, nor that he was of limited means. He might, for aught that appears, have been worth a hundred thousand dollars, clear of incumbrance, within the jurisdiction of the Court, and the affidavit have been true, since the deponent only states that, in his judgment, the Defendant was not of such pecuniary condition as to leave the interests of the Plaintiffs secure. It will scarcely be contended, that such an opinion was any legal

evidence,—the statement of any facts authorizing the Court to interfere.   To take property from the possession of a party legally entitled thereto, in such a summary manner, would lead to the most dangerous consequences.

The order was also erroneous, in ordering the property to be sold, without any facts whatever appearing indicating the propriety or necessity therefor.   Facts may indeed have existed, (if it be admitted that the Court was justified in transfering the possession of the property) why the same should be immediately sold and converted into money, but the Court cannot take judicial notice of them, and they not appearing in any manner from the record, the property should have been retained to abide the event of the suit.

This view of the case renders it unnecessary to examine the jurisdictional question, as to the power of the Court to order the transfer of personal property, not within the State.   The order being erroneous on other grounds, should be reversed.

We think the judgment below should be reversed and a new trial granted.