ALEXANDER RANKIN, CUNNINGHAM SMITH, GEORGE C. C. THURGER, AND JOHN McCALL, PLAINTIFFS IN ERROR, *v.* JESSE HOYT.

Under the act of 1832, the collector had power to direct wool to be appraised, for the purpose of ascertaining whether or not it was entitled to be imported free from duty; the exemption depending upon its value not exceeding eight cents per pound at the place of exportation.

Although it was necessary for the collector to request the appraisers to act, and no such request appears in the record, yet the legal presumption is, that the collector and appraisers did their duty, he requesting their action and they complying.

And the collector's subsequent adoption of the proceedings of the appraisers is tantamount to having requested them.

It was the duty of the collector to be guided by such an appraisement, and a subsequent verdict of a jury, finding that the value of the wool was under eight cents per pound, cannot be considered as rendering his acts illegal.

The importer had a right to appeal to another board of appraisers, differently constituted, and if he did not choose to resort to them, he cannot, with much grace, afterwards complain that an over-estimate existed.

THIS case came up, by writ of error, from the Circuit Court of the United States for the Southern District of New York.

It was an action brought by the plaintiffs in error, transacting

business as copartners, in the city of New York, under the name of Smith, Thurger, & Co., for the return of duties which they alleged to have been illegally exacted, upon several importations of wool, by Hoyt, the collector of New York.

The acts of Congress which bear upon the case are the following.

By the act of the 14th of July, 1832, entitled "An act to alter and amend the several acts imposing duties on imports," by the first clause of the second section (4 Lit. & Brown's ed. 583), it is enacted, — "That wool unmanufactured, the value whereof, at the place of exportation, shall not exceed eight cents per pound, shall be imported free of duty; and if any wool so imported shall be fine wool, mixed with dirt or other material, and thus reduced in value to eight cents per pound or under, the appraisers shall appraise said wool at such price as in their opinion it would have cost had it not been so mixed, and a duty thereon shall be charged in conformity with such appraisal; on wool unmanufactured, the value whereof, at the place of exportation, shall exceed eight cents, shall be levied four cents per pound, and forty *per centum ad valorem*."

By the seventh section of the same act, it is enacted, — "That in all cases where the duty which now is, or hereafter may be, imposed on any goods, wares, or merchandise imported into the United States shall, by law, be regulated by, or be directed to be estimated or levied upon, the value of the square yard, or of any other quantity or parcel thereof; and in all cases where there is or shall be imposed any *ad valorem* rate of duty on any goods, wares, or merchandise imported into the United States, it shall be the duty of the collector within whose district the same shall be imported or entered to cause the actual value thereof, at the time purchased, and place from which the same shall have been imported into the United States, to be appraised, estimated, and ascertained, and the number of such yards, parcels, or quantities, and such actual value of every of them as the case may require; and it shall, in every such case, be the duty of the appraisers of the United States, and every of them, and every other person who shall act as such appraiser, by all the reasonable ways or means in his or their power, *to ascertain, estimate, and appraise the true and actual value, any invoice or affidavit thereto to the contrary notwithstanding*, of the said goods, wares, or merchandise, at the time purchased, and place from whence the same shall have been imported into the United States, and the number of such yards, parcels, or quantities, and such actual value of them as the case may require; and all such goods, wares, and merchandise, being manufactures of wool, or whereof wool shall be a component part, which shall be imported into the United States in an unfinished condition, shall, in every such appraisal, be taken, deemed, and estimated by the said

Rankin et al. *v.* Hoyt.

appraisers, and every of them, and every person who shall act as such appraiser, to have been, at the time purchased, and place from whence the same were imported into the United States, as of great actual value as if the same had been entirely finished : Provided, that, in all cases where any goods, wares, or merchandise subject to *ad valorem* duty, or whereon the duty is or shall be by law regulated by, or be directed to be estimated or levied upon, the value of the square yard, or any other quantity or parcel thereof, shall have been imported into the United States from a country other than that in which the same were manufactured or produced, the appraisers shall value the same at the current value thereof, at the time of purchase, before such last exportation to the United States, in the country where the same may have been originally manufactured or produced."

And by the eighth section it is further enacted, — " That it shall be lawful for the appraisers to call before them, and examine upon oath, any owner, importer, consignee, or other person, touching any matter or thing which they may deem material in ascertaining the true value of any merchandise imported, and to require the production on oath to the collector, or to any permanent appraiser, of any letters, accounts, or invoices, in his possession, relating to the same ; for which purpose they are hereby authorized to administer oaths ; and if any person so called shall fail to attend, or shall decline to answer, or to produce such papers when so required, he shall forfeit and pay to the United States fifty dollars ; and if such person be the owner, importer, or consignee, the appraisement which the said appraisers may make of the goods, wares, or merchandise shall be final and conclusive, any act of Congress to the contrary notwithstanding ; and any person who shall swear falsely on such examination shall be deemed guilty of perjury, and if he be the owner, importer, or consignee, the merchandise shall be forfeited."

By the third section of the act of the 28th of May, 1830 (4 Lit. & Brown's ed. 409), entitled " An act for the more effectual collection of the impost duties," it is enacted, — " That if the owner, importer, or consignee, or agent for any goods appraised shall consider any appraisement made by the appraisers, or other persons designated, too high, he may apply to the collector, in writing, stating the reasons for his opinion, and having made oath that the said appraisement is higher than the actual cost and proper charges on which duty is to be charged, and also that he verily believes it is higher than the current value of the said goods, including said charges at the place of exportation, the collector shall designate one merchant skilled in the value of such goods, and the owner, importer, consignee, or agent may designate another, both of whom shall be citizens of the United States, who, if they cannot agree in an appraisement, may designate an umpire, who shall also be a citizen.

of the United States, and when they, or a majority of them, shall have agreed, they shall report the result to the collector, and if their appraisements shall not agree with that of the United States' appraisers, the collector shall decide between them."

This last enactment was not repealed by the act of 1832, and it was under this last act, as modified by the compromise act of 1833 (4 Lit. & Brown's ed. 629), that the cause came on to be tried at the November term, 1842.

The plaintiffs in error made three several importations of wool in the year 1838, viz. : —

April,     by the Sarah Sheafe,   25 bales.
May,       "   "   Josephine,     21   "
November,   "   "   Renown,      19   "

The whole of the duties paid upon these several importations were claimed in this one action.

The jury found a special verdict of the following facts, viz. : — That the plaintiffs in error were copartners ; that Hoyt was collector of the customs ; that the three importations above mentioned were made and the original invoices produced ; that in each invoice the value of the wool was stated to be seven and one half cents per pound ; that the wool was all unmanufactured ; and then proceeded as follows.

" And the jurors aforesaid, upon their oaths aforesaid, further find, that upon the importation of the said three several invoices of wool as aforesaid, and upon the several entries thereof, the said wool was examined and appraised by the appraisers of the United States for the collection district of New York, and that the said appraisers did, upon such examination, appraise the said wool, and each and every part and parcel thereof, as of the value, at the places of exportation thereof, of nine cents per pound ; which appraisements were, by said appraisers, reported to the collector, and from which said appraisements, or either of them, no appeal was made by the said plaintiffs.

" And the jurors aforesaid, upon their oath aforesaid, further say, that the said appraisers found the said several parcels of wool to be unmixed and of the same quality.

" And the jurors aforesaid, upon their oath aforesaid, further find, that the said collector claimed and insisted that the said wool was subject to the payment of duties to the United States according to the valuation of the appraisers, so reported to him, and refused to deliver the said wool to the plaintiffs except upon payment by them of the duties claimed by the defendant to be due thereon as aforesaid."

The special verdict then went on to find that the plaintiffs in error insisted that the wool was free from and not subject to the payment of any duties to the United States, and protested against

the right of Hoyt to require payment of any duties ; that they paid, under this protest and a notice that they would bring an action to·recover it back, the sum of $1,909·93, and that the interest thereon, from the time of payment until the 29th of November, 1842, amounted to $577·22, the aggregate of the principal and interest being $2,487·15 ; that the duties charged by Hoyt were calculated and charged upon the value of the wool, as appraised by the appraisers, and that the wool mentioned in the three several invoices, and each and every part and parcel thereof, at the place of exportation, was of the value of seven and one half cents per pound and no more.

Upon this special verdict, the court, on the 23d of December, 1843, ordered a judgment to be entered in favor of Hoyt, the defendant, and a writ of error brought the case up to this court.

The cause was argued by *Mr. Dudley Selden* for the plaintiffs in error, and *Mr. Mason* (Attorney-General), for the defendant in error.

*Mr. Selden* made the following points.

First. Under the facts found by the special verdict, the plaintiffs were entitled to judgment.

Second. The power vested in the officers of the revenue to appraise the value of goods subject to duty does not authorize them to decide whether goods are or are not subject to duty.

Third. If the act of July 14th, 1832, " to amend the several acts imposing duties on imports," has extended the power, under certain circumstances, in regard to the article of unmanufactured wool, the finding in this case shows that those circumstances did not exist, and therefore the appraisement is inoperative.

Fourth. The power given to the appraisers by section second of that act, in relation to unmanufactured wool invoiced at eight cents per pound or less, is confined to the inquiry whether the value thereof has been diminished by being mixed with other material. The seventh section of the act applies alone to goods subject to duty.

Fifth. If the appraisers acted without authority, an appeal from their decision was unnecessary.

Mr. Justice WOODBURY delivered the opinion of the court.

The right of the plaintiffs to recover in this case, and consequently to have a reversal of the judgment rendered in the Circuit Court, must depend on the legality of the course pursued by the defendant.

No question has been made by counsel, that an action in this particular form cannot be maintained against a collector of the customs, if the course pursued by him was illegal, or that the protest against paying the duties should have been in writing ; points which have arisen in similar controversies and led to special legisla-

tion by Congress, but not being made here, it is not necessary now to consider them.    See on them Elliott *v.* Swartwout, 10 Peters, 138, 158 ; Bond *v.* Hoyt, 13 Peters, 267 ; Carey *v.* Curtis, 3 Howard, 236 ; Swartwout *v.* Gihon, 3 Howard, 110 ; Act of February 26th, 1845.

The illegality imputed to the proceedings of the collector is supposed to have consisted in this ; that he possessed no power, in cases of this kind, to call on the appraisers to estimate the value of the wool ; and if he did possess it, that they do not appear to have acted here by his request.    These objections, if well sustained, are material, because, by the appraisal, the true value of the wool was reported to be nine cents per pound, and then, by the act of July 14th, 1832, a duty on it was " levied of four cents per pound, and forty *per centum ad valorem*."    (4 Lit. & Brown's. ed. 583.)    Whereas if the appraisal was unauthorized, and the invoice should have been the only guide, the value of the wool was but seven and a half cents per pound, and by the same act it ought then to have been allowed to " be imported free."

The legal power of the collector to call on the appraisers to estimate the value of this wool rests on the construction which ought to be given to the second and seventh sections of the act aforesaid, both of which are extracted at length in the statement of this case. The plaintiffs contend, that the seventh section, authorizing an appraisal where the duty may be regulated by the value, or imposed at a rate *ad valorem*, is not applicable to any importations which, like these, if looking to the invoice alone, are not dutiable ; and that the second section, regulating the appraisement of wool " mixed with dirt or other material," is the only one applicable to wool which, like this, was valued so low in the invoice as to be free ; but did not in this case authorize the action of the appraisers in respect to these particular importations, as these, by the verdict of the jury, afterwards, were found not to have been so mixed.

In the first place, we so far coincide with the views of the plaintiffs, as to be satisfied that the second section does not justify the course pursued by the defendant in the present case.    But we dissent from the argument, that it is the only section applicable to importations like these, and hold that the seventh section, though open to different constructions on this subject, is plainly susceptible of one which embraces it ; and that the spirit of the section, as well as of the whole system of appraisement under the revenue laws, seems not only to justify, but require, the application of its provisions to importations like those now under consideration.    It ought, then, to be so construed ; since this court has recently decided, that acts imposing duties are not, as has often been done, to be construed strictly against the government, like penal laws, but so as " most effectually to accomplish the intention of the legislature in passing them."    Taylor et al. *v.* United States, 3 Howard, 210.

Rankin et al. *v.* Hoyt.

By the words of this last section, so far as material to the present inquiry, it is provided, that if the duty "imposed on any goods, wares, or merchandise" "shall by law be regulated by, or be directed to be estimated or levied upon, the value of the square yard, or of any other quantity or parcel thereof, and in all cases where there is or shall be imposed any *ad valorem* rate of duty," &c., "it shall be the duty of the collector" "to cause the actual value thereof, at the time purchased," &c., "to be appraised, estimated, and ascertained," &c., by appraisers.

Under the act of May 19th, 1828, a duty partly specific and partly *ad valorem* had been imposed on all wool imported from abroad. No doubt can exist, that the power to have appraised the value of any wool, imported under that act, had it remained unaltered in 1838, would have existed in the collector, because a duty in all cases was imposed and was in some degree *regulated by the value*, though it was not wholly *an ad valorem rate of duty*. But by the act of July 14th, 1832, an amendment was made in the rate on one description of wool, so as to admit it free, if its value did not exceed eight cents per pound, and the argument for the plaintiff is, that as such wool no longer paid an *ad valorem* duty, the collector would no longer call on the appraisers to estimate its value. It is to be noticed, however, that this exemption did not make wool, as an article, cease to be dutiable. Nor did it become, after this change, any less important, in *regulating* the duty which was proper to be imposed on any wool, to ascertain the true value of it in all cases, so as to levy thereon four cents per pound and forty per cent. *ad valorem*, if the value turn out to be above eight cents per pound; and nothing if at or below eight cents. (See the first section, 4 Lit. & Brown's ed. 583.)

This act may then be considered to authorize the use of appraisers not merely when an article imported pays an *ad valorem* rate of duty, but whenever the duty is *regulated by* the value; or in other words, as we construe the provision, whenever a duty may exist or cease according to the value, as well as whenever it may increase or diminish, according to it. The language of the seventh section is broad enough, under this view, to justify the course that was adopted by the collector in the present case. But, if we look to the spirit of that section, and of the whole act of which it forms a part, in respect to the policy both of employing appraisers and discriminating in the duties imposed on wool, any remaining doubt as to the propriety of considering this case as coming within the seventh section must be removed. If the appraisers could not be called on to estimate the true value of the wool, when imported at low prices, but the value in the invoice was alone to guide, the revenue on all wool was manifestly liable to be lost; or the treasury greatly defrauded, by the article being put in the invoice at a price below the actual value, in order to introduce it free. Any inci-

dental protection, contemplated from the duty, to the growth of finer and more valuable wools in this country, would also be thus exposed to total defeat by the importation of this last kind at a valuation so low as to escape any duty whatever.

The utility of appraisers in such a case is even more apparent and important than in most others, because the value of wool is uncertain, fluctuating, and liable to be concealed by many ingenious devices, — lowering the prices in the invoice, and others putting different qualities of wool in the same bale, or bringing it in mixed with dirt and burrs. It is on this last account, and not, as argued for the plaintiffs, because it is the only case in which the appraisers were authorized to act in respect to wool, that the second section requires them, in estimating its value, if mixed, to appraise it as high as if not mixed. In like manner, the act of 1832, as well as 1828, requires wool imported on the skin to be taxed according to its "weight and *value*," as in other cases. And, instead of either of these provisions appearing to exclude the use of appraisers generally for ascertaining the true value of low-priced wool, they both seem to contemplate or imply their employment in such imports, knowing that the duty was to be affected or *regulated by* the value, and proceeding therefore merely to lay down specific rules for ascertaining it in cases where the wool is found to be mixed or on the skin.

It is not a little confirmatory of this view, that the act of August 30th, 1842, which imposes some duty on all kinds of wool, and thus confessedly authorizes an appraisement in every importation, repeats substantially the provisions in former acts for guiding the appraisers in estimating the value of mixed wool; thus showing with absolute certainty that such provisions do not in other acts exclude — or can probably in the present case be meant to exclude — the employment of appraisers in ascertaining the true value of wool, however low it is put in the invoice, and however unmixed it may be with other materials.

The only adjudged case which has been alluded to by the plaintiffs as supporting their views is that of Curtis *v.* Martin et al., 3 Howard, 106.

There the article in question, being gunny-bags, had not, at the time the duty was levied, been specified in the tariff laws, as subject to any duty whatever, in any form or value. The effort by the collector was to impose a duty on it under another name, such as cotton bagging. But in the present case, the article in dispute had been made by Congress dutiable in express terms, and no kinds of it were exempt unless of a particular value; and the object and the effect of the appraisement were not, as has been contended, to make the article of wool dutiable, when it was not before dutiable by law, but to see whether a particular import of the article

Rankin et al. *v.* Hoyt.

was actually of so small value per pound as by law to be entitled to exemption from duty.

The other leading objection urged in this case is more easily disposed of.    In saying that the appraisers had no right to act without the previous request of the collector, and that no such request appears in the evidence, nothing is stated beyond the truth.    But, in the absence of testimony to the contrary, the legal presumption is, that the appraisers and collector both did their duty, he requesting their action, as by law he might, and they complying.

Beside this, it is conceded that he adopted their doings, and such a subsequent ratification of them is undoubtedly tantamount to having requested them.    An incidental exception taken in the argument is, that as the jury have found the value in the invoice to be correct, the collector could not be justified in following the higher valuation of the appraisers.    But an appraisal, made in a proper case, must be followed, or the action of the appraisers would be nugatory, and their appointment and expenses become unnecessary.    Tappan *v.* The United States, 2 Mason's R. 404. The propriety of following it cannot in such case be impaired by the subsequent verdict of the jury differing from it in amount, as the verdict did not exist to guide the collector when the duty was levied, but the appraisal did, and must justify him, or not only the whole system of appraisement would become worthless, but a door be opened to a new and numerous class of actions against collectors, entirely destitute of equity.    We say destitute of it, because, in case the importer is dissatisfied with the valuation made by the appraisers, he is allowed, by the act of Congress of May 28th, 1830, before paying the duty, an appeal and further hearing before another tribunal, constituted in part by persons of his own selection.    (See second section, 4 Lit. & Brown's ed. 409.)

These persons have been aptly denominated a species of "legislative referees" (2 Mason, 406) ; and if the importer does not choose to resort to them, he cannot with much grace complain afterwards that any over-estimate existed.

The judgment below is affirmed.