## KIMBALL v. THE COLLECTOR.

Under the proviso to the Act of March 3, 1857 (11 Stat. at Large, 192), which act allows an importer to make additions to the value of goods as given in the entry or invoice; and which proviso provides "that under no circumstances shall the duty be assessed upon an amount less than the invoice or entered value, any law of Congress to the contrary notwithstanding;" and the act of the same day (Ib. 199), which enacts that unmanufactured sheep's wool above the value of 20 cents, shall pay an *ad valorem* duty of 24 per cent., but if "of the value of 20 cents or less, at the place of exportation, shall be exempt from duty," the invoice and entered value (which in this case was the actual cost), and not any lower market value of the goods at the date and place of exportation, is the value upon which the duty is to be assessed.

ERROR to the Circuit Court for Massachusetts; the case being this:

---

* 6 Cranch, 206.      † 4 Wallace, 220.
‡ 4 Meeson and Welsby, 320.      § § 1413.

The fifth section of an act of March 3, 1857,* "reducing the duties on importations and for other purposes," imposes an *ad valorem* duty of 24 per cent. on unmanufactured wool, but exempts from duty such wool (being sheep's) " of the value of 20 cents per pound or less, at the place of exportation."

Another act of the same day, amendatory of an act of 1846, allows the importer to make such addition in the entry to the cost or value of the imports, given in the invoice, as in his opinion may raise the same to the true market value in the country whence exported. The collector is then to have them appraised, and if the appraised value exceeds by 10 per cent. the value declared as above on entry, a duty of 20 per cent. *ad valorem* is to be added to the duty imposed by law. And the act concludes:

" *Provided,* nevertheless, that *under no circumstances* shall the duty be assessed upon an amount *less* than *the invoice or entered value,* any law of Congress to the contrary notwithstanding."

This enactment and this proviso being in force, Mr. Cobb, then Secretary of the Treasury, made in September, 1857, soon after the passage of them, a decision thus:

"In estimating the foreign value of wool, with reference to its exemption from or liability to duty, the appraisers can determine such value *independently of the invoice,* by prices current and other reliable means of information, of the value of the article in foreign markets, such as they employ in ascertaining the foreign values of other staple articles of import."

In this state of things, Kimball bought at Cape Town, Africa, a quantity of wool of the sort above mentioned, at 10 pence sterling (somewhat more than 20 cents Federal money) a pound. He did not, however, ship it at once, but kept it on hand at Cape Town. Some months, afterwards, that is to say in June, 1861, he shipped it to the United States; the price of wool at the date of shipment having

---

* 11 Stat. at Large, 192, 199.

fallen to 8½ pence per pound (less than 20 cents Federal money). The wool, however, was invoiced in accordance with the requirements of law, at its actual cost, 10 pence sterling per pound, and was entered according to the invoice value, which, of course, made it dutiable at the rate of 24 per cent. *ad valorem.*

The appraisers reported upon the invoice:

" *Value correct in English weight, April* 25, 1861."

This report was in accordance with a custom prevailing in their department to make invoices in this manner, in which the price stated is high enough to cover the market value; and the duties, $15,651, were accordingly assessed upon it at this value.

After the appraisers had made their report, and duties had been estimated on the wool, but before payment of them by the importer, the collector requested the appraisers to make a re-examination of this wool, and a formal appraisement of its value. The appraisers, in reply, declined to make any appraisement of it at less than the invoice price, giving as a reason that they could not do this by law; but, at the collector's request, they made to him a statement in writing, which they expressly declared was not an official appraisement, in which they stated the market value of this wool in the principal markets of the country from which it was exported, to have been at the time of its exportation, 8 pence 3 farthings per pound, less than 20 cents Federal money, and a rate at which the wool would, of course, have been duty free.

The decision of Mr. Cobb was not brought to the knowledge of the appraisers at the time of their appraisement of this wool.

The importer having complied with all the technical and formal requirements necessary to enable him to maintain an action under the act of Congress, against the collector, for the recovery of duties illegally exacted, brought the suit below to recover these; it being agreed by the parties that if, upon the case stated, the value of this wool, as far as the

laws of the United States were concerned, could be considered as less than its invoice price, then judgment should be for the importer; otherwise for the collector.

The court below gave judgment for the collector, and the importer brought the case here; the question, and the only question, being whether, taking into consideration the language of the first statute of 1857, and also that of the proviso to the other act of the same day, the collector should have allowed this wool to be entered free, when the price stated in the invoice was more than 20 cents, and its actual value was less.

*Messrs. C. Cushing and W. E. Chandler, with a brief of Mr. W. E. Ingalls, for the importer, plaintiff in error:*

1. The statement in the invoice, of the cost of the wool, was made as of course and in accordance with the law of Congress, of which the importer is obliged to state in the invoice the exact sum paid for the goods. But various other acts of Congress would indicate that it was the intention of that body that in determining whether wool was free or dutiable its actual value at the port and date of exportation should govern.

The act of 1832* is as follows:

" Wool unmanufactured, the value whereof *at the place of exportation* shall not exceed 8 cents per pound, shall be imported free of duty."

That of 1857, under which this importation arose, is to the same effect.

A third, that of 1861,† is thus: it exempts—

" Wool unmanufactured, the value whereof at the *last* port or place from whence *exported* to the United States shall be 18 cents or under per pound."

This court, in *Peaslee v. Sampson,*‡ decide that the day of sailing is the date when the value is to be taken.

---

* 4 Stat. at Large, 583.    † 12 Stat. at Large, 196.    ‡ 20 Howard, 571.

2. Mr. Cobb's decision shows that the practice of the department under this very act was in harmony with this interpretation. Another decision, not presented in the case as stated, was issued June 15th, 1857, thus:

"On a question submitted to the department, it is decided that the time at which the value of wool at the port of exportation is to be estimated with a view to its exemption from duty under the tariff act of March 3d, 1857, is the _date of exportation_ from the foreign port for the United States, as provided by law in reference to the appraisement of imports for the assessment of duties."

Under these interpretations of the act by the Treasury Department, this importer acted, and the interpretation has been sustained as a true one in the 2d circuit (by Smalley, J.), in the case of _Davison_ v. _Draper._*

3. Is the intent of Congress, as expressed in the first act of 1857, controlled by the proviso in the later act?

It being the rule in the construction of statutes, as declared by Lord Mansfield,† that all which relates to the same subject must be taken to be one system and construed consistently—construed also, another well-known rule tells us, _ut res magis valeat quam pereat_—no conflict is to be allowed if it be possible to prevent a conflict. Now here no conflict will exist if we interpret things under the guidance of these rules, and reasonably.

The two statutes relate to entirely different matters. The proviso is to the 2d statute, and operates only on the class of cases which _it_ embraces.

The first statute provides a way to determine whether an article is free or dutiable. If it is found to be free when tried by this test, then the proviso does not apply, for there is no duty to be assessed. If, on the other hand, the wool is found when tested by the first statute to be dutiable, then the last statute applies and says upon what that duty shall be assessed.

---

* Pamphlet Report, Concord, N. H., 1870, pp. 27.
† Rex _v._ Loxdale, 1 Burrow, 447.

For instance, suppose this wool had been invoiced at 22 cents, and when examined its value at the port and period of exportation had been found to be 21 cents. By this last report it was dutiable, and then by the proviso the dutiable value would be 22 cents, or the price stated in the invoice.

An opposite mode of interpretation involves us in great difficulties.

*First.* If the proviso does control the previous statute, then it practically defeats its operation, for the intention of Congress in the statute of 1857 is clear, as has been previously shown, that the *value* of the import shall govern. The court must avoid, if possible, a construction which makes Congress stultify itself.

*Second.* By holding that this proviso controls the previous statute you hold out an inducement to merchants to make fraudulent sales to avoid the effect of such a construction. If, for example, prices fall between the date of purchase and the date of exportation so far as to exempt from duty that which was charged with a heavy duty, the owner will make a fictitious transfer at the lower price to some friend, and the goods will be invoiced anew at the lower price. The court must avoid a construction which makes Congress guilty of legislation whose effect is to cause frauds on the revenue.

4. Every consideration of equity and justice is here upon the side of the importer, and this should have great weight when the law is doubtful.

5. But if the proviso is irreconcilable with the preceding statute, the proviso it is which must give way, not the enactment. The enactment is the principal thing; the proviso subsidiary and adjectitious.*

*Mr. Akerman, Attorney-General,* and *Mr. C. H. Hill, Assistant Attorney-General, contra:*

1. It is not well argued, as argued by opposing counsel, that independently of the proviso, this wool should be assessed at its value at the date when exported.

The language of the statute of 1857, exempting certain

wool from duty, is almost identical with that of the statute of 1832,* exempting from duty wool not exceeding in value eight cents per pound. Under the statutes at that time in force, goods imported from the country of their production were appraised for the purpose of imposing duties at their value in that country " at the time when purchased," and this continued to be so until the statute of March 3d, 1851.†

By the statute of 1842,‡ it was enacted " that in all cases where there is or shall be imposed any *ad valorem* rate of duty on any goods," &c., " imported, and *in all cases where the duty imposed shall by law be regulated by or directed to be estimated or based upon the value* of any specified quantity or parcel of such goods," &c., " it shall be the duty of the collector . . . to cause the actual market value, or wholesale price thereof *at the time when purchased* in the principal markets of the country from which they shall have been imported, . . . to be appraised, estimated, and ascertained," and this value, with certain other charges specified, is made " the true value at the port where the same may be entered, upon which duties shall be assessed."

By the statute of 1857,§ it is enacted " that in all cases *where there is, or shall be imposed any* ad valorem *rate of duty on any goods,*" &c., " imported into the United States, it shall be the duty of the collector . . . to cause the actual market value, or wholesale price thereof, *at the period of the exportation to the United States,* in the principal markets of the country from which the same shall have been imported, . . . to be appraised, estimated, and ascertained," and such value or price, with certain other specified charges, is made " the true value at the port where the same may be entered, upon which duties shall be assessed."

By this act, all acts and parts of acts inconsistent with its provisions are repealed.

Thus the statute of 1857 only applies to the first class of

* 4 Stat. at Large, 583.

† Chap. 38, § 1, 9 Stat. at Large, 629; Greely *v.* Thompson, 10 Howard, 225.

‡ Chap. 270, § 16, 5 Stat. at Large, 563.          § Chap. 38, § 1.

cases mentioned in the statute of 1842; namely, those cases " where there is, or shall be imposed, any *ad valorem* rate of duty," and omits all reference to the other class of cases; namely, " those where the duty imposed shall by law be regulated by, or directed to be regulated by, or based upon the value of any specified quantity," &c., of the goods.   This omission is significant, and would seem to show that, as to this latter class of cases (within which ours falls), the value at the time when the goods were purchased is to be considered the true value at the port of importation, and not the value at the time when they were exported.

2. But, however this may be, the invoice price must be here regarded as conclusive evidence of the value.

Under the customs laws, the invoice is generally conclusive evidence of value as respects the importer, though not as respects the government.

By the statute of 1823,* a true invoice, containing a just and faithful account of the cost of merchandise which has been purchased, and supported by oath, is required when goods are imported.

By section 17 of the tariff act of 1842,† a penalty of fifty per cent. additional duty was imposed when the appraised value exceeded by ten per cent. the invoice value; and it was not until the statute of 1846‡ that the importer was allowed " to make such addition in the entry to the cost of the value given in the invoice as in his opinion may raise the same to the true market value of such imports in the principal markets of the country whence the importation shall have been made:  . . . *Provided, nevertheless,* that under no circumstances shall the duty be assessed upon an amount less than the invoice value, any law of Congress to the contrary notwithstanding."

This act was amended in certain respects immaterial to the present discussion by the act of 1857, but the above quoted proviso was re-enacted in the same language.

---

* Chap. 21, 3 Stat. at Large, 727, *et seq.*          † 5 Ib. 564.

‡ Chap. 74, § 8, 9 Ib. 43.

By our revenue laws, therefore, the invoice is regarded, not as a mere bill of parcels, but as a solemn statement of the importer, supported by oath. For a long time, an innocent difference between the invoice value and the true value of imported goods, by which the latter exceeded the former ten per cent., was made the occasion for imposing a penalty of fifty per cent. additional duty, and the statutes which relieve the importer from this harsh burden expressly provide that under no circumstances shall the duty be assessed upon an amount less than the invoice value.

There is no authority for the idea of the other side, of making one appraisement for the purpose of determining if merchandise be exempt from duty, and if it is found to be dutiable, then of making another appraisement for the purpose of determining the value upon which *ad valorem* duties are to be assessed, and it would seem to follow that the invoice must be as binding in the one case as the other.

Revenue systems are largely artificial. The values in reference to which duties are assessed are often arbitrary. There is no hardship in enacting that particular imports of such a value shall be duty free; provided, however, that nothing less than what the party has deliberately sworn to as their cost shall be taken to be such value. At all events the hardship is no greater than it is in any case where the invoice value exceeds the real value. But whether greater or less, courts cannot remedy it.

Mr. Justice CLIFFORD delivered the opinion of the court.

Import duties, illegally exacted, if paid under written protest " signed by the claimant,' setting forth distinctly and specifically the grounds of objection to the payment, may be recovered back in an action of assumpsit against the collector.*

Recent enactments have annexed certain other conditions, of a very important character, to the right of action in such cases, but it is not necessary to enter into those details as

* 5 Stat. at Large, 727; The Assessor *v.* Osbornes, 9 Wallace, 571; Nichols *v.* United States, 7 Id. 126; Philadelphia *v.* Collector, 5 Id. 731.

none of the new provisions have any application in the case before the court.*

Four hundred and ninety-one bales of wool were imported in the month of June, 1861, into the port of Boston by the plaintiff or his intestate, and the agreed statement shows that the wool was duly entered at that port for consumption. Duties were assessed upon the same to the amount of fifteen thousand six hundred and fifty-one dollars and eighty cents, and the plaintiff or his intestate paid the same, having first complied with all the formal conditions to enable him to maintain the present action.

Wool unmanufactured, of the value of twenty cents per pound or less at the port of exportation, was at that time entitled to be admitted to entry free of duty, but wool unmanufactured, "imported from abroad," of greater value than twenty cents per pound at the port of exportation, was subject to an *ad valorem* duty of twenty-four per cent., as imposed by the act reducing the duty on imports and for other purposes.†

By the agreed statement it appears that the wool imported in this case was shipped in the barque Vatella, which sailed from Cape Town on the twenty-fifth of April prior to the importation, but it also appears that the wool was purchased by the shippers at that place several months before the barque sailed. They purchased it at ten pence sterling per pound as stated in the invoice, and the parties agree that the price given in the entry at the custom-house is the same as that given in the invoice, and that both correspond with the actual cost of the wool at the place of exportation.

American ships bringing goods from any foreign port into the United States are required to have on board a manifest signed by the master describing the goods and the vessel, and giving the name of the port where the goods were shipped, and the name of the port to which they are consigned.‡

On arriving within four leagues of our coast the master

---

* 13 Stat. at Large, 214.            † 11 Stat. at Large, 192, 194.
‡ 1 Stat. at Large, 644.

of such ship is required, if the proper officer of the customs comes on board, to produce such manifest to such officer for his inspection, and he is also required, within twenty-four hours from the time the vessel arrives at a port of the United States where an officer of the customs resides, to report that fact to the collector or chief officer of the customs at that port.*

Goods imported from any foreign port or place are required to be landed in open day, and the act of Congress provides that such goods shall not be landed or delivered from the ship without a permit from the collector and naval officer, if any, for such unlading and delivery. Authority to grant such a permit does not exist, if the goods are intended to be entered for consumption, until the duties are paid or secured to be paid, and the duties are never paid nor are they ever secured to be paid in such a case before the importation is complete and the goods are entered at the custom-house. Such an entry, that is, an entry for consumption, must be in writing, and must be made by the owner, consignee, or agent, to the collector of the district, within fifteen days from the time the master reports the arrival of the vessel, and the person making the entry must also produce to the collector the original invoice or invoices, or other documents received in lieu thereof, or concerning the same, in the same state in which they were received, with the bills of lading.

Examination of the entry, as presented by the owner, consignee, or agent, is usually made by the entry clerk, and if found to be correct the collector proceeds *to estimate the duties* "*on the invoice value and quantity*," and if the *estimated* amount of the duties is paid or *secured* to be paid, as required by law, the collector is then authorized to grant a permit for the discharge and landing of the cargo. Until those acts are performed no one has any authority to grant a permit or to remove the hatches, but the inspector remains in charge of the vessel.

---

* 1 Stat. at Large, 649.

Import duties, it will be observed, are estimated in the first place, if they are *ad valorem*, on the invoice value and quantity as shown in that document, unless additions are made to the same by the owner, consignee, or agent, in the entry at the custom-house, and in that state of the case the duties are estimated on the invoice value and quantity together with those additions to the same, but in either event the duties are estimated at that stage of the proceedings without any appraisal.

Evidently it must be so, as the estimated duties are required to be paid or to be secured to be paid before the permit is granted to remove the hatches, and before the goods are landed from the vessel.

Such duties so estimated may be paid at the time, or, what is more usual, they may be secured to be paid by depositing the amount in gold with the collector, subject to an equitable adjustment when the duties are liquidated and the correct amount of the same is ascertained by such subsequent proceedings as are prescribed by law for that purpose.

Subsequent proceedings are essential to the ends of justice, as computations based solely on the invoice value and quantity will seldom prove to be correct, as the values expressed in the invoice may be less than the true market value of such imports in the principal markets of the country whence the importation was made, or articles imported may have been omitted in the invoice, or articles contained in the invoice may have been lost during the voyage, or the actual quantities as ascertained by the weighers, gaugers, or measurers may differ from those given in the invoice and entry. Corrections of the kind are frequently necessary, but they are never made until the goods are landed and appraised.

Collectors are required by law to cause the dutiable value of imported goods subject to an *ad valorem* rate of duty to be appraised, estimated, and ascertained, and the provision is that if the appraised value shall exceed by ten per centum the value so declared in the entry, the goods are subject to a duty of twenty per cent. *ad valorem* on such appraised value

in addition to the rate imposed where no such under-valuation is shown.*

Penalties of the kind, however, may be avoided if the under-valuation in the invoice is corrected in the entry at the custom-house, as the same section provides that it shall be lawful for the owner, consignee, or agent of imports which have been actually purchased, or procured otherwise than by purchase, on entry of the same to make such addition in the entry to the cost or value in the invoice as in his opinion may raise the same to the true market value of such imports in the principal markets of the country whence the importation shall have been made.

Additions may be made to the cost or value of the goods as given in the invoice to raise the same to the true market value, but the additions, in order that they may have effect to avoid the additional duty of twenty per cent., must be made before or at the time of the entry, as no such corrections can be made afterwards, or, in other words, the additions, if any, must be made before the permit is granted and before the goods are landed, because if they are not made before those acts are performed the additions made to the cost or value given in the invoice would not become a part of the dutiable value in estimating the duties prior to the appraisal, and if the appraisers should report that the invoice value was correct the amount of the additions would escape taxation altogether. Nothing remains to be done subsequent to the granting of the permit and the landing of the goods except such acts as are required by law to correct any errors in the invoice and to liquidate the duties, as the express provision in the principal collection act is that all the duties on goods, wares, and merchandise shall be paid or be secured to be paid before a permit shall be granted for landing the same.†

Before the permit is granted, it is the duty of the owner, consignee, or agent to present the invoice to the collector and make the entry in the form required by law, and there-

---

* 1 Stat. at Large, 673.                    † 11 Stat. at Large, 199.

upon the collector certifies the invoice and grants the permit in due form for the discharge and landing of the cargo, first designating the packages, at least one in ten, to be sent to the public store, and marks the same on the entry, invoice, and permit.*

Packages intended for examination by the appraisers are usually sent to the public store for that purpose, but cumbrous articles may be examined on the wharf where they were landed, and samples may, in certain cases, be used for the same purpose instead of the packages from which they were selected by the sampler.

Pursuant to the usual practice the goods in this case were entered for consumption according to the invoice value, to wit, at ten pence sterling per pound, expressed in decimals, which made the wool dutiable at the rate of twenty-four per cent. *ad valorem.*

Tested by the facts of the case as given in the agreed statement, it is clearly to be inferred that the preliminary proceedings were correct; that the invoice was seasonably presented to the collector; that the entry of the goods was regularly made for consumption; that the duties were properly estimated on the invoice value, and quantity; that the duties as thus estimated were duly paid or secured to be paid before the permit was granted; that the permit was subsequently granted in due form for the landing of the goods, and that one in ten of the packages was ordered to the public store for the examination of the local appraisers. Prior to that stage of the proceedings the appraisers have no jurisdiction of the case, and they have no duty to perform in the premises.

Beyond doubt, the collector may direct that all packages shall be examined, but he is required to designate on the invoice at least one package of the same, and one package at least of every ten packages of the importation, and the direction is that he shall order the same to the public stores to be opened, examined, and appraised. All those require-

---

* Waring v. The Mayor, 8 Wallace, 119; Gen. Reg. 1857, 145.

ments having been fulfilled, the appraisers are furnished with the original invoice which contains the marks of the collector, designating the packages sent to the public stores for their examination.

Briefly stated, their duty is to appraise, estimate, and ascertain the true market value of such imports in the principal markets of the country whence such importation was made, and to report their doings to the collector. They examined the packages sent to the public stores, and the agreed statement shows that they reported upon the invoice "value correct," in accordance with the prevailing custom to mark invoices in that manner in cases where the price given in the invoice was high enough to cover the market value.

Complaint is made that the custom does not allow the appraisers to reduce the invoice value when it is greater than the true market value, but the decisive answer to that complaint is, that the act of Congress authorizing the appraisal of the importation expressly provides "that under no circumstances shall the duty be assessed upon an amount less than the invoice or entered value" of the importation. Where the entered value is the same as the invoice value the legal effect of the requirement is the same as it was in the prior act which did not contain the words entered value, but in cases where the owner, consignee, or agent makes additions to the value expressed in the invoice to avoid the penalty of twenty per cent., the words " entered value" have a special application, and in those cases the duty cannot be assessed upon an amount less than the entered value, which includes the value expressed in the invoice and the additions made thereto by the owner, consignee, or agent before or at the time the goods were entered at the custom-house.

Ten pence sterling per pound was the actual cost of the wool at the time it was purchased, and the price actually paid for the wool is the value expressed in the invoice, and the same value is given in the entry made by the consignee, and the agreed statement shows that the appraisers reported that the invoice value was correct, and if the matter had

stopped there the case would be too plain to admit of any controversy, as it would show that every requirement of law had been followed without the least departure, and that nothing had been done to which the plaintiff or his intestate objected at the time the act was performed, as he made the entry and gave therein the value expressed in the invoice as the true market value of the imports in the principal markets of the country whence the importation was made.*

"Value correct," was the report of the appraisers when they returned the invoice to the collector, and the duties were liquidated and assessed upon that amount as the true dutiable value of the goods, but before the duties were paid by the consignee as liquidated, the collector requested the appraisers to make a re-examination of the wool and "a formal appraisement of its value," but they declined to make any appraisement of it at less than the invoice price, giving as a reason that they could not do so by law, evidently referring to the provision in the appraisement act that under no circumstances shall the duty be assessed upon an amount less than the invoice or entered value. At the collector's request, however, they made a statement to him in writing, "which they expressly declared was not an official appraisement, in which they stated" that the market value of the wool at the time it was exported, in the principal markets of the country where it was purchased, was eight pence and three farthings per pound, at which rate the wool would have been entitled to entry free of duty. Prices of wool had declined at that port subsequent to the purchase in this case and before the barque sailed, so that the wool might have been purchased at the time it was exported at the reduced price named by the appraisers.

*Ad-valorem* duties were always estimated, prior to the act of the 20th of April, 1818, by adding a prescribed percentage, including charges and commissions, to the actual cost of the goods at the place where the same were purchased and exported, the actual cost being ascertained by the invoice.†

* 11 Stat. at Large, 199.        † 1 Stat. at Large, 41, 673; 3 Id. 436.

Whenever, in the opinion of the collector, there was just ground to suspect that goods subject to an *ad valorem* duty, and imported into his district, had been invoiced below the true value of the goods in their actual state of manufacture at the place from which they were imported, the collector, by the act last cited, was authorized to direct that the goods should be appraised in the manner prescribed in the ninth section of that act, which was the first authority of the kind conferred in the acts of Congress in cases where the entry was accompanied by the invoice, as required by law. Such duties were required to be estimated, by the act of the first of March, 1823, by adding all charges except insurance and a prescribed percentage to the actual cost of the goods if the same were purchased, or by making the same additions to the actual value of the goods if they were procured otherwise than by purchase, or by making the same additions to the appraised value of the goods if the same were appraised, except in cases where the goods were subject to a certain penalty, and the express provision was that the rates of duties should be estimated on such aggregate amount. Goods imported from foreign countries could not be admitted to entry unless the invoice accompanied the entry, nor unless the invoice was verified by oath, and neither the act under consideration nor the first collection act gave the collector or the appraisers any authority to reduce the price or value of the goods as expressed in the invoice.*

Dutiable values of imported goods, subject to an *ad valorem* rate of duty, were required by the act of the thirtieth of July, 1846, to be estimated and ascertained by appraisement, adding costs and charges as therein prescribed, but the provision was that under no circumstances " shall the duty be assessed upon an amount less than the invoice value."†

Costs and charges, except insurance, were also required to be added to the appraised value by the act of the third

---

* 3 Stat. at Large, 732.

† 9 Id. 43; Shelton et al. *v.* Austin, 1 Clifford, 389.

of March, 1851; but the act vested no authority either in the collector or the appraisers to reduce the valuation of the goods below the invoice or entered value, and no such authority, applicable in this case, is found in any act of Congress passed prior to the time when the entry before the court was made at the custom-house.*

On the contrary, the act of Congress under which the appraisers acted in this case expressly provides, as before explained, that under no circumstances shall the duty be assessed upon an amount less than the invoice or entered value, the substance of which provision has been in force for a quarter of a century.†

Importers are required to make an entry of their importations, which should always be accompanied by the invoice, duly verified by oath, and when the entry is made and the permit granted the packages for appraisement are designated on the invoice by the collector who orders one in ten of them to the public store for the purpose of appraisal. Examination of the selected packages is then made by the appraisers, who report their doings to the collector, and if no appeal is taken from their appraisement, either to the general appraisers or to the Secretary of the Treasury, their decision in the premises is final and conclusive as to the dutiable value of the importation.‡

Appraisers, it is said, are to appraise, estimate, and ascertain the true market value of such imports, whether of greater or less value than that expressed in the invoice and entry; but the decisive answer to that suggestion is that their duties are regulated by the act of Congress under which they act, and inasmuch as it is provided that the duties shall not under any circumstances be assessed upon an amount less than the invoice or entered value, it is clear that the appraisers have no authority to make any such appraisement as that which they were requested to make by the collector. Redress for such a grievance, if it be one, must be

---

* 9 Stat. at Large, 630.    † 11 Id. 199.

‡ Belcher et al. v. Linn, 24 Howard, 521; Bartlett v. Kane, 16 Id. 272; Rankin v. Hoyt, 4 Id. 327; Stairs v. Peaslee, 18 Id. 524.

sought in Congress, as Congress and not the courts possesses the power to lay and collect taxes, duties, imposts, and excises, and to pass all laws which shall be necessary and proper to carry that power into execution.

Extended remarks respecting the case of *Rankin* v. *Hoyt**[*] need not be made, as the statement of the fact shows that the appraisers in that case added to the value expressed in the invoice, and the decision was founded upon the act of the fourteenth of July, 1832, which did not contain the provision that the duties should not under any circumstances be assessed upon an amount less than the invoice or entered value, and consequently it is not an authority which controls the present case.

Comment upon the fifth section of the tariff act under which the goods were imported in this case may also be omitted for reasons of a like character, as the section must be construed in view of the proviso of the amendatory act passed on the same day, which prohibits both the appraisers and the collector from making any reduction in the invoice or entered value in the assessment of *ad valorem* duties.

JUDGMENT AFFIRMED.