### SAXONVILLE MILLS *v.* RUSSELL.

*(Circuit Court, D. Massachusetts.* January 7, 1880.)

REVENUE—DUTY ON WOOL—PRESUMPTION AS TO "INVOICE VALUE."—It will be presumed, in the absence of testimony, that where an importation of wool was appraised at its "invoice value," such appraisment did not include the charges upon the wool at the port of exportation, when the invoice contained the amount and cost of the wool separate from such charges.

SAME—SAME—APPRAISAL.—An actual appraisement by the appraiser is conclusive as to the value of such importation, in the absence of an appeal to the merchant appraisers, and the collector is therefore required to assess the duty upon such valuation.

SAME—SAME—INVOICE VALUE.—Unwashed Cordova wool is within the provisions of the act of March 3, 1865, (13 St. at Large, 493, § 7,) which provides that the duty assessed upon certain imports "shall not be assessed upon an amount-less than the invoice or entered value" of such imports.

CLARK, J. The act of June 30, 1864, entitled "An act to increase duties on imports and for other purposes," imposed a duty on unmanufactured wool, according to its grade or value, at the port whence exported to the United States, exclusive of charges in such port. If of the value of "twelve cents or less, three cents per pound; exceeding twelve cents, and not exceeding twenty-four cents per pound, six cents per pound; exceeding twenty-four cents per pound, and not exceeding thirty-two cents, ten cents per pound, and in addition thereto ten per centum ad valorem; exceeding thirty-two cents per pound, twelve cents per pound, and in addition thereto ten per centum ad valorem." This act also contained a provision for the appraisal of goods, wares and merchandise in accordance with the provisions of existing laws, and a further provision *"that the duty shall not be assessed upon an amount less than the invoice or entered value, any law of congress to the contrary notwithstanding."* 13 St. at Large, 217, § 7.

The act of March 3, 1865, entitled "An act amendatory of certain acts imposing duties upon foreign importations," did not change the grade or rate per pound at which wool was to be taxed, but provided "that in all cases where there is or shall be imposed any *ad valorem* rate of duty on any goods, wares or merchandise imported into the United States, and in all cases where the duty imposed by law shall be regulated by, or directed to be estimated or based upon, the value of the square yard, or of any specified quantity or parcel of such goods, wares or merchandise, it shall be the duty of the collector, within whose district the same shall be imported or entered, to cause the actual value or wholesale price thereof, at the period of exportation to the United States, in the prin-

cipal markets of the country, from which the same shall have been imported into the United States, *to be appraised, and such appraised value shall be considered the value upon which duty shall be assessed.*" "*Provided, the duty shall not be assessed upon an amount less than the invoice or entered value, any act of Congress to the contrary notwithstanding.*" 13 St. at Large, 493, § 7.

The act of July 28, 1866, entitled "An act to protect the revenue, and for other purposes," while altering the rates of duty on many other articles, did not change the rate of duty on wool further or otherwise than it provided "that, in determining the dutiable value of merchandise hereafter imported, there shall be added to the cost, or to the actual wholesale price or general market value, at the time of exportation, in the principal markets of the country from whence the same shall have been imported into the United States, the cost of transportation, shipment and transhipment, with all the expenses included from the place of growth, production, or manufacture, whether by land or water, to the vessel in which shipment is made to the United States; the value of the sack, box, or covering of any kind in which such goods are contained; commission at the usual rates, but in no case less than two cents and a half per centum; brokerage, export duty, and all other actual or usual charges for putting up, preparing and packing for transportation and shipment." All charges of a general nature to be distributed pro rata among all parts of the invoice. 14 St. at Large, 330, § 9. But "*the duty in no case to be assessed upon an amount less than the invoice or entered value.*"

From these provisions of the act of 1866 "long combing or carpet wools, costing 12 cents or less per pound, unless the charges so added should carry the cost above 12 cents per pound, in which case one cent per pound should be added," were expressly excluded, showing quite clearly that other kinds of manufactured wools were included. *Expressio unius est exclusio alterius.*

This act of 1866 did not repeal the act of 1865 only so far as it was inconsistent therewith, and it did not change or

alter the duty of the appraiser or collector in regard to imported goods, as provided and expressed in section 7 of the act of 1865, further than to add costs and charges of various kinds to the wholesale price of the goods in the principal markets of the country from which the same shall have been imported into the United States.

The act of March 2, 1867, (14 St. at Large, 559,) entitled "An act to provide increased revenue from imported wool, and for other purposes," provided for a classification of wools into "clothing wool," "combing wools," "and carpet and other similar wools." These classes were again divided, each into two grades. The class to which any imported wool belonged was to be determined by samples prepared under the direction of the secretary of the treasury and deposited in the custom houses and elsewhere; the grade of the wool, in its particular class, by the value at the last port or place whence exported to the United States, excluding charges in such port. This act contained no words repealing any former act, except the expression "in lieu of the duties now imposed by law" there shall be levied, etc., certain other rates of duty on various articles, among which was wool, as above stated. The act of June 6, 1872, (17 St. at Large, 230,) reduced these rates of duty on wool 10 per centum.

With the law as provided and enacted in these several statutes, the plaintiff, in August, 1873, imported into Boston from Rosario, by the bark "Velox," 324 bales of unwashed Cordova wool, and entered it in bond. The entry was accompanied by the invoice of the wool, showing the cost of the wool and the charges thereon, separately. The wool was purchased March 2, 1873, and cost more than 12 cents per pound; it was shipped on the fifth of June following. On the tenth of the same June Thomas B. Wood, acting consul of the United States at Rosario, made the following certificate on the invoice:

"U. S. CONSULATE, June 10, 1873.

"I, Thomas B. Wood, acting U. S. consul for Rosario, do hereby certify, after investigation, that the market value of unwashed Cordova wool at this place, at the date of the

shipment of the annexed invoice, was 32 to 32½ Bolivia reals, equivalent to 24 38-100 to 24 76-100 reals fuerta, per arroba, net weight.

"Given under my hand and seal this day.

"THOMAS B. WOOD,
"Acting U. S. Consul."

—Which, being reduced to United States weight and currency, shows a value at Rosario less than 12 cents per pound.

When this entry came before the appraiser, for examination and appraisal, he appraised the wool at the invoice price—that is, more than 12 cents per pound. With this appraisement the plaintiff was dissatisfied, claiming, as appears by his protest, that the wool was of value less than 12 cents per pound at the last port whence exported to the United States, at the date of exportation; that "the acting United States consul so certified in the invoice." But he claimed no appeal therefrom to the merchant appraisers. The defendant, collector of customs, assessed and exacted of the plaintiff a duty of six cents per pound, less 10 per centum. The plaintiff claimed that a duty of three cents per pound, less 10 per centum, should have been laid upon the wool, and paid the extra three cents under protest.

The question then is, was the defendant right in exacting a duty of six cents per pound, less 10 per centum, upon the wool, instead of three cents per pound, less 10 per centum?

It cannot be questioned that it was the duty of the collector, when this wool was entered, to cause it to be appraised. He was required to do so by the act of March 3, 1865, § 7, (13 St. at Large 493,) and he could not otherwise determine the duty to be levied per pound on the wool, which was to be determined whether three or six cents, by its value. The appraiser appraised the wool as required, and fixed its value at the "invoice value." It was suggested in the argument that the "invoice value" might have included charges upon the wool at the port of exportation, as well as the price paid or value of the wool. But the presumption is, in the absence of any testimony on the point, as the invoice contained the amount and cost of the wool separate from the charges, that

the appraiser did not include the charges in the "invoice value" of the wool, but excluded them, as required by law.

With this appraisal the plaintiff was dissatisfied, and he complained, as appears by his protest, that the value of the wool was less than 12 cents per pound, as certified by the United States consul on the invoice, and that the appraiser has not appraised, determined and reported the true market value of the wool at the date and place of exportation. But he claimed no appeal to the merchant appraisers to correct the appraisal. The value of the wool at the last port whence exported to the United States, excluding charges in such port, was a matter of fact, and upon it the appraisal was conclusive, if no appeal was taken. The act of March 3, 1865, § 7, (13 St. at Large, 493,) required the collector to assess the duty upon it. "*Such appraised value shall be considered the value upon which duty shall be assessed,*" is the language of the statute. *Iasigi* v. *Collector*, 1 Wall. 375; *Tappan* v. *United States*, 2 Mason, 393–404; *Rankin* v. *Hoyt*, 4 How. 327.

In *Bartlett* v. *Kane*, 16 How. 263–272, the court say: "The appraisers are appointed 'with powers, by all reasonable ways and means, to ascertain, estimate and appraise the true and actual market value and wholesale price' of the importation. The exercise of these powers involves knowledge, judgment and discretion, and in the event that the result should prove unsatisfactory a mode of correction is provided by the act. It is a general principle that when power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are binding and valid as to the subject-matter." "The interposition of the courts in the appraisement of importations would involve the collection of the revenue in inextricable confusion and embarrassment."

In *Rankin* v. *Hoyt*, 4 How. 327, it was held the duty of the collector to be guided by the appraisement, and a subsequent verdict of a jury finding that the value of the wool was under eight cents per pound cannot be considered as rendering his acts illegal.

So in this case, the subsequent statement in the agreed case that wool fell at Rosario between the time of the purchase of the wool and the time of exportation, and that at the time and place of shipment the market value, excluding charges in such port, was less than twelve cents per pound, cannot affect the imposition of the duty by the collector in accordance with the appraisal. See, also, *Belcher* v. *Linn*, 24 How. 508; *Schmaire* v. *Maxwell*. 3 Bl. C. C. 408.

The plaintiff contends in this case that the appraisal was not legal or sufficient; nevertheless, it was an actual appraisement, free from fraud, and in the exercise of the appraiser's best judgment and discretion, and the remedy was by an appeal. These considerations dispose of the "first," "second," "third" and "fifth" grounds of the plaintiff's protest and of the case. But there remains the "fourth" ground of protest, and, as the case has been argued at length on that ground by the counsel for the plaintiff, it may be well that the court should state its conclusions upon that also.

The "fourth" ground of protest by the plaintiff is this: "The proviso in section 7 of the act of March 3, 1865, that the duty shall not be assessed upon an amount less than the invoice or entered value, does not apply to this import. The act of March 2, 1867, in express terms repeals all prior laws imposing duty on wools, and makes new classifications based on blood of sheep, and the rate of duty is fixed by the value at the last port of exportation, and exclusive of charges in such port." Now it is quite true that the act of March 2, 1867, above referred to, did provide that "in lieu of the duties now imposed by law on the articles mentioned and embraced in this section (§ 1 of the act) there shall be levied, collected and paid on all unmanufactured wool, hair of the alpaca goat and other like animals imported from foreign countries, the duties hereinafter provided." But it should be kept in mind that the proviso of section 7 of the act of 1865, *that the duty shall not be assessed upon an amount less than the invoice or entered value*, did not refer specifically to importations of wool, nor was it enacted in reference thereto alone, but it applied to "all cases where the duty imposed by law shall be regu-

lated by, or directed to be estimated or based upon, the value of the square yard, or any specified quantity or parcel of such goods, wares or merchandise," and is not repealed by any provision of the act of 1867. Indeed, it would seem to be directly applicable to the provision of the act of 1867, in regard to wool, in this, that the rate of duty in each of the grades of wool in the several classes is determined by the value of the wool at the time and place of exportation, exclusive of the charges of the port. "But," then adds the proviso, "the duty shall not be assessed upon an amount less than the invoice or entered value, any act of congress to the contrary notwithstanding." This view of the statutes of 1865 and 1867 is much strengthened by an examination of the act of June 30, 1864, entitled "An act to increase duties on imports, and for other purposes." The fourth section of the act (13 St. at Large, 206) imposes a duty on wool, of the description of the wool in controversy, almost precisely the same as the duty in this case, to-wit: "On all wool unmanufactured, and all hair of the alpaca goat, and other like animals, *the value whereof at the last port or place from whence exported to the United States, exclusive of charges in such ports, shall be: 12 cents or less per pound, three cents per pound; exceeding 12 cents, and not exceeding 24 cents per pound, six cents per pound.*" Then, in the twenty-third section, providing for the appraisement of goods, wares and merchandise, follows the proviso "that the duty shall not be assesed upon an amount less than the invoice or entered value, any law of congress to the contrary notwithstanding."

The case of *Kimball* v. *The Collector*, 10 Wall. 436, is in point. That case, in some of its features, closely resembles the one under consideration. The question was whether the value of the wool was more than 20 cents per pound, or 20 cents or less. If valued at more than 20 cents per pound, the wool was liable to duty; if at 20 cents per pound, or less, it was free of duty. The invoice value of the wool when bought was more than 20 cents per pound, but before it was shipped the price of wool had fallen, and at the date of shipment it was less than 20 cents per pound. The court held the invoice

value must govern, and that the appraisers could not go below it. If the invoice value was the lowest value at which the goods could be appraised in deciding whether they were liable to duty or not, it is difficult to see why the invoice value is not to be held to be the lowest value at which the merchandise can be appraised, in determining whether the duty should be six cents or three cents; the rate of duty per pound depending on the value of the merchandise per pound.

It is objected that in the case of *Kimball* v. *The Collector* the duty was *ad valorem,* and in the case under consideration specific. But the amount of the specific duty depended on the value of the goods, just as, in the case of *Kimball* v. *The Collector,* it depended on the value of the goods whether the duty should be 24 per cent. *ad valorem* or nothing. Further, the act of March 1, 1823, § 23, (3 St. at Large, 737,) "that when any goods, wares or merchandise shall be admitted to an entry upon invoice, the collector of the port in which the same are entered shall certify the same under his official seal, and no other evidence of the value of such goods, wares or merchandise shall be admitted on the part of the owner or owners thereof in any court of the United States, except in corroboration of such entry," confirms the opinion of the court that judgment should be for the defendant on all the grounds of protest.