WILLIAM M. BOYLAN et al. v. ANNA C. HOLT, Executrix.

1. COUNSEL FEES — MEASURE OF COMPENSATION IN THE ABSENCE OF SPECIAL CONTRACT. A person who employs counsel to conduct a suit, in the absence of a special contract, is liable to compensate him according to a *quantum meruit*.

2. SAME — BAR FEE BILL. While a client who has notice of the terms fixed by a bar fee bill, and employs counsel at that bar, may be bound by the rate of charges fixed in the fee bill, as impliedly consenting to that rate, one who has no notice or knowledge of those rates would not, by the mere fact of employing counsel, he held bound by them.

3. SAME — SOLICITOR'S RIGHT TO COMPENSATION ORDINARILY NOT DEPENDENT ON CONDUCTING SUIT TO A CLOSE. A solicitor employed to conduct a chancery suit, who filed the bill and conducted the suit to a final decree, and died, is entitled to a fee for his services, upon a *quantum meruit*, and his right to remuneration does not depend on his conducting the suit to a close and collecting the money, unless by special contract he has made the performance of that a condition precedent.

4. WITNESS — WHEN DEFENDANT INCOMPETENT. — In a suit by an executor the defendant is an incompetent witness to testify to a contract between himself and the testator.

5. RECORD OF A SUIT OUT OF WHICH THE CLAIM FOR COUNSEL FEE SUED ON AROSE, COMPETENT EVIDENCE. — In a suit to recover counsel fees accrued in a chancery suit, the papers and record of the suit are competent evidence to

show the character of the suit, the amount involved, and all that had been done in it, and, where the suit is apparently for the benefit of the client, as tending to show a retainer by him.

6. EMPLOYMENT OF OTHER COUNSEL DOES NOT AFFECT SOLICITOR'S RIGHT TO FULL COMPENSATION. — That complainant in a decree, after the death of the solicitor who obtained it, employed other counsel to see the case through, and agreed with them on the full compensation usual for collecting money by suit, does not affect the right of the legal representative of the first solicitor to recover what his services in obtaining the decree were reasonably worth, and it is proper to reject such evidence.

ERROR to circuit court of Yazoo county. SHACKLE-FORD, J.

This was an action of *assumpsit* by the executrix of a deceased lawyer, to recover his fee for conducting, to a final decree, a suit in chancery in favor of defendants. Issue was joined and a trial had, resulting in a verdict for plaintiff. The evidence showed that plaintiff's testator had instituted and conducted the suit to a final decree, and died before any money was made under the decree. An appeal was taken from the decree, and pending the appeal a compromise was made, under which, $5,000 were paid down and $45,000 to be paid at a time not yet lapsed.

The following instructions were granted for plaintiff, viz.: 1. The court instructs the jury that, if they believe, from the evidence, that R. S. Holt was, in his life-time, employed by the defendants to file a bill to foreclose the mortgage mentioned in the account sued on, and that he obtained a decree therein, and afterward died, that they must find for the plaintiff what they believe, from the evidence, his services were reasonably worth, with interest thereon from the date of the decree. 2. That in determining the amount due said Holt, the jury must take into consideration the amount for which the decree was rendered, the amount agreed on in the compromise between the defendants and W. R. Miles, and the rate of fees for similar services charged at the time by the lawyers practicing in the court. 3. That the fee, if any is due, became due at the date of the decree.

The following instructions were asked for by defendants

and refused, viz: 1. Unless the jury believe from the evidence that R. S. Holt was employed by Green & Boylan to bring the suit against Miles, he cannot recover in this action, and the burden of proof is on plaintiff, and proof that the services were rendered by Holt is not alone sufficient to prove that he was employed. 2. Under the proof, the jury are instructed that, if the plaintiff recover at all, she can only recover upon the amount actually received by Boylan from Miles, and as to the amount not due by Miles, she cannot recover in this action. 3. That if the jury believe from the evidence, that, by the custom of lawyers, the fees for collection were not due until the money is collected, and that in this case $5,000 has been paid by Miles, and the balance of $45,000 is to be paid on the 1st February next, then the plaintiff in this suit can only recover commissions on the $5,000 already paid. 5. If the jury believe from the evidence, that the services of R. S. Holt, in his life-time, as attorney of defendants, was of no benefit to defendants, then the law is for defendants, and they will so find.

This instruction was given for defendants, viz.: 4. The court instructs the jury that, if they believe from the evidence that plaintiff is entitled to recover any thing at all in this suit, it can only be such commissions as are usually charged on the amount received by defendants, arising from the services of her testator, R. S. Holt, deceased, as attorney for said defendants.

*Wilkinson & Bowman*, for plaintiffs in error.

The suit below was an action of *assumpsit* for attorney's fees, alleged to be for services rendered by appellee's testator in his life-time. The testimony shows that Mr. Holt in his life-time filed a bill in favor of plaintiffs in error against William R. Miles, and a decree was rendered in the chancery court of Yazoo county by consent. Up to the death of Mr. Holt there was no litigation in the case, but after his death it was severely litigated for a long period in the high court of errors and appeals.

Under this state of facts, we think that the court erred in granting the instructions of the plaintiff.

The first instruction assumes, without any evidence to support it, that Mr. Holt was employed by appellants to file this bill in chancery.

When the suit is by attorney for fees, etc., he must prove his retainer, and the fees and services charged. An attorney cannot maintain suit for compensation for services merely by proof that the services were rendered, but must go farther, and show that they were requested, or, in other words, that he was retained as attorney or counsel. Parsons on Cont. (5th ed.) 115; Burghart v. Gardner, 3 Barb. (S. C.) 64; 2 Greenlf. on Ev. § 139 ; Hotchkiss v. LeRoy & Rogers, 9 Johns. 141 ; 2 Starkie on Ev. (4th Am. ed.) 129, marg. p. 130 ; 2 Phillips on Ev. (2d ed.) 70.

There was in this case now before the court no evidence of retainer, and no evidence, by any act of recognition on the part of plaintiffs in error, that Mr. Holt was their attorney in the case of Greene et al. v. Miles.

The latter part of the first instruction given for plaintiff below, and the refusal of the third instruction asked for by defendant below, we think is contrary to law. The granting and refusal of said instructions ignored the custom or usage of lawyers in the construction of the rights and liabilities of the parties to this suit.

Mr. Holt being a party to the rules and regulations of the Yazoo bar, even if there had been proof of his retainer, unless there had been a special contract proven, we contend that the amount of compensation for his services would be regulated by the regulations or rules established by the Yazoo bar, of which he was a member, or, in other words, these regulations are evidence of the usage or custom of charges by him and the other lawyers of Yazoo city, and the law would imply a contract in view of the tariff, or usage of charges established by him, and the other members of his profession.

Whenever there is an established usage in a particular

trade, the parties are presumed to have contracted in reference thereto. Story on Cont. (4th ed.) §§ 14, 474; Bank of Washington v. Tupsett, 1 Pet. 33; Williams et al. v. Gilman, 3 Green, 258; United States v. Arredondo, 6 Pet. 744, 2 Greenlf. on Ev., § 251; Loring v. Buerney, 5 Pick. 15.

Again we contend, that the court should not have granted the instructions of the plaintiff below, nor refused those of plaintiffs in error, because the implied contract between Mr. Holt and plaintiffs in errror was an entire executory contract.

Where the contract is executory, if the agreement be that one party shall do a certain act, for the performance of which the other party shall pay a sum of money, the performance of the act is a condition precedent to the payment of the money. 1 Story on Cont., § 18; Mary Washington Female College v. McIntosh, 36 Miss. 677; Wooten v. Reed, 2 Smedes & Marsh. 588; McMillan v. Vanderlip, 12 Johns. 166; Jennings v. Camp, 13 ib. 96.

The contract of an attorney to carry on or defend a suit is an entire contract to manage a suit to its close, and is not affected by the statute of limitations until the termination of all proceedings. Ang. on Lim., §§ 120, 148. An entire contract is a contract the consideration of which is entire on both sides. The entire fulfillment of the promise by either is a condition precedent to the fulfillment of any part of the promise by the other. Whenever, therefore, there is a contract to pay a gross sum for a definite consideration, the contract is entire and not apportionable either in law or equity. The contract is founded upon a consideration, dependent upon the entire performance thereof, and if from any cause it be not wholly performed, the *casus fœderis* does not arise, even though prevented by overwhelming necessity. Story on Cont., § 22; Reab v. Moor, 19 Johns. 341; Cutter v. Powell, 6 Term Rep. 324; Starke v. Potter, 2 Pick. 267; Gilpins v. Consequa, 1 Pet. C. C. 91. What then was the contract or undertaking of Mr. Holt in this case? Under the regulations of the Yazoo bar, and by the testimony of Judge Hudson, he was bound to collect the money of

Greene & Boylan, or prosecute the defendant, Miles, to *nula bona*. Neither was done. Hudson, in his testimony, says, that this was of the articles of agreement framed by Mr. Holt and the other members of the bar. An attorney who commences suit is bound to proceed to its termination. 1 Tidd's Prac. 86 ; Cresswell v. Byron, 14 Ves. 272, 273. The testimony of Boylan should not have been excluded. This witness was one of the defendants below, and was offered to prove a special contract with Mr. Holt, and that the suit of Greene & Boylan was not authorized. Our statute provides that no person, whether a party to a suit or otherwise, shall be incompetent to give evidence in any suit at law or in equity, by reason of any interest in the result thereof, etc., provided that no person shall be a witness in any suit by or against himself, to establish his own claim to an amount exceeding $50, against the estate of a deceased person. Rev. Code, p. 510, art. 190. This point, now presented to the court in the construction of the above statute, is an open one. The testimony of the witness was not to establish his own claim against the estate of R. S. Holt. The statute in its terms is broad, comprehensive and general, making without restriction parties to a suit competent as witnesses, and is limited only by the proviso to establish his own claim against the estate of a decedent. Boylan had no claim to establish by his testimony against the estate of Mr. Holt.

This court, in the construction of our statutes, have been careful to follow their terms, and to adhere closely to their provisions. It is not the province of courts to engraft exceptions upon statutes, or to impair their practical utility by the introduction of refinements. Smith v. Westmoreland, 12 Smedes & Marsh. 665 ; Ingraham v. Regan, 23 Miss. 228.

A court of law will not make any interpretation contrary to the express letter of a statute, for nothing can so well explain the meaning of the makers of the act, as their own direct words. Smith's Com., § 505.

Although the proviso restricts the competency of a party to establish his own claim against the estate of a decedent, yet the converse of the proposition, that he is incompetent to defeat the claim of a decedent against himself, does not follow if the statute is construed by the express letter. To render this witness incompetent, would be to engraft an exception upon the statute, by extending the incompetency of witnesses beyond the express and literal words of the statute. It would introduce a refinement of construction by usurping the language of the statute from its ordinary signification, and make "to establish" mean also to defeat. The express mention of one thing implies the exclusion of another, or in other words "*espressum facit cessare tacitum.*" Smith's Com., § 508 ; 2 Dwarris on Stat. 712, 713.

The court erred, we think, in excluding the testimony of R. Bowman. This witness was offered to prove the employment of appellant's attorneys, according to established rate of members of the Yazoo bar, to wit, ten per cent on amount realized.

The reason given by the court in Creswell v. Byron, 14 Ves. 272, 273, we think decides the competency of this testimony. It certainly would be a hard rule to make plaintiffs in error suffer loss, not by their own fault, but by reason of the misfortune which befel Mr. Holt. The attorneys of the bar, at which Mr. Holt practiced, established certain rates of charges, and he, as well as all other parties to said rules, were pledged to act upon them in good faith. The court says, in 14 Ves. 272, that an attorney has no lien if he does not carry the business through, for the reason that, if that could take place, there might be numerous claims of lien. And, by analogy, if an attorney, under the regulations made by the Yazoo bar, from any cause, is taken from a case, the client is subject to numerous fees, which might consume the subject-matter of the suit.

As the members of the bar, by their regulations, did not provide for an exigency like that in the case before the court, the law does not make provisions for their neglect.

Where a contract is founded upon a consideration dependent upon the entire performance of the act, it is wholly immaterial to the rights of the other whether the non performance has arisen from neglect, or attributable to inevitable casualty or accident. 1 Story's Eq. Jur., § 470 ; Chanter v. Leese, 4 Mees & Wels. 310; Story on Cont., § 22.

*A. M. Harlow*, for defendant in error.

When the decree was recovered in the chancery court, the services of the attorney, so far as that court was concerned, were ended. A commissioner has been appointed, whose duty it was made to proceed to sell the land embraced in the decree, report the sale and have it confirmed. If an appeal should be taken to the appellate court, that would be a new suit or proceeding for which an additional fee would be charged, and, as is very often the case, new counsel might be employed in the appellate court. It being inconvenient for a lawyer, residing at a distance, to argue causes in the high court, we have no doubt that one half of the suits, taken to the appellate court, are prosecuted or defended by lawyers of Jackson, who had no connection with said cases in the court below. This question is covered by the case of Johnson v. Pyles, 11 Smedes & Marsh. 189. In that case this court held, that an attorney is entitled to his fees as soon as he obtains judgment, and that the fee is then due, and the statute of limitations commences running from the date of the judgment. Then, as in this case, a lawyer recovered judgment for his clients and died. The collection of the judgments were enjoined. In the case now before this court, the executrix of the attorney brings suit to recover the fee due to her testator. The jury gives her a judgment for about five per cent on the amount taken in satisfaction of the decree, and a writ of error is sued out to the appellate court. In the case which we cite, the high court decided that the services of the attorney were at an end and his fees due when the judgments were obtained. We contend that the same rule applies to the case now before the court.

If Mr. Holt were living, in the absence of a special contract, he could have sued for his fee, the moment he recovered the decree. At the moment when that decree was rendered, the complainants in the chancery suit, the plaintiffs in error, were indebted to their counsel for his services in that suit in the sum of $7,299 10. If Mr. Holt himself could have brought suit for his fee in that case, for a much stronger reason can his executrix bring suit for it, as she very properly did. If the rights of Mr. Holt were fixed at the time when the decree was rendered, surely, no act of his client, after his death, could impair his rights. The services were of a personal nature, and the contract could not be impaired by the act of his client or by any third party. His death, the act of God, discharged him from the contract, even if the services to be performed by him had been incomplete. His executrix, surely, beyond all doubt, is entitled to recover the fee so well earned by her testator, in his life-time.

If a person is prevented from performing a stipulated amount of labor, even by sickness, he may recover pay for what he has done, on a *quantum meruit.* 1 Pars. on Cont. 524, and notes O and P. If a party voluntarily abandons a contract, before completion on his part, it would be held entire, and he could not recover. Not so, if he dies. In the one case there is fault, in the other there is none.

The first error assigned by plaintiff in error is the granting of instructions to the plaintiff in the court below.

These instructions are manifestly correct. The decree was obtained by Mr. Holt, in his life-time. In Johnson v. Pyles, 11 Smedes & Marsh. 189, cited above, it is decided that the attorney's fee is due at the date of the judgment, in the case in which he was employed. That the amount of the decree, the amount agreed on in the compromise with Miles, and the rate of fees charged by lawyers, should be considered by the jury in determining the amount due Mr. Holt, is a proposition too clear to need argument to sustain it. The

instructions given to the plaintiff below were by the court declared to be the law, and are obviously correct.

The second assignment of errors is, that the first, second, third and fifth instructions, asked by defendants below, were refused, and the fourth modified.

· The first instruction asserts that unless Mr. Holt was employed by Green & Boylan to bring the suit against Miles, proof that he rendered the services was not sufficient to prove that he was employed. The bill, the decree and all the pleadings and proceedings therewith connected, were read as evidence to the jury. Mr. Holt, as the papers show, had possession of the notes upon which the bill was filed. W. R. Miles and R. S. Hudson testified that Holt conducted the case and obtained the decree, of which Boylan and Green took the benefit, and there was no proof offered to show that he was not employed. The instruction, by stating but part of the testimony, was calculated to mislead the jury, and was, therefore, properly refused. But the simple fact that he rendered the services, and that plaintiffs in error availed themselves of the benefit and fruits of those services, were sufficient, as this court has heretofore decided.

The second instruction is, that plaintiff could recover, if any thing, only upon the amount actually received by Boylan and Green, from Miles, which amount was $50,000. According to this view of the case, if Boylan had concluded to give Miles twenty years credit, the fee could not be collected until the expiration of that period; or, if he concluded never to collect the decree, the fee would be lost. The injustice and unreasonableness of this position show its unsoundness. The fee was due at the time of the rendition of the decree. Johnson v. Pyles, 11 Smedes & Marsh. 189.

Boylan and Green, by compromising with Miles, could not affect the rights of R. S. Holt. This instruction, therefore, was very properly refused.

The third instruction is, in substance, the same as the second ; and, if one is objectionable, so is the other.

The fifth instruction is, that if the jury believed Holt's services were of no benefit to defendants, that they must find for them. This instruction was based upon no evidence, but in direct conflict with the testimony. He had filed the bill, recovered the decree, and the land embraced in the mortgage was amply sufficient to pay the whole amount of the decree. He had done all that any other lawyer could have done in the case. The value of the services were proven, and were proven to be valuable. There was no proof introduced to show the contrary. How, then, could it be left to the jury to say that the services were of no value ? The instruction ought, beyond all question, to have been refused.

The fourth instruction was modified, and we think rightly. As offered, it states that plaintiff could only recover "for the amount of the benefit received by the services of her testator." This was too indefinite, too loose ; left too much to the discretion of the jury ; was no guide to them ; made them the judges of the law and facts of this case. It was, therefore, modified by the judge so as to state that the recovery, if any, should be for such commissions as are usually charged for such services. This was certainly as favorable to the defendants as they had a right to expect. There was proof before the jury as to the rate of charges of lawyers in the court where the suit was brought. The instruction, as given, comported with the evidence. As originally offered, it did not correctly announce the law, and allowed too much latitude to the jury.

The fourth assignment of errors is, that the record of the chancery suit of Boylan & Green v. Miles, was improperly admitted as evidence on behalf of the plaintiff below. Bills in chancery may be read as evidence to the jury. They are not conclusive evidence, but may be left to the jury to be weighed as other evidence. 1 Greenlf. on Ev., § 212. It was necessary to introduce the decree to prove that it had

been obtained, the amount of it, and when obtained. It was the highest and best evidence to prove itself. It could not have been dispensed with. It was necessary to introduce the bill to prove its character, the manner in which it was drawn, and as evidence tending to prove that R. S. Holt was employed by the defendants. Taken in connection with the testimony of Miles and Hudson, it was clearly admissible.

The fifth objection is to the exclusion of the testimony of Wm. M. Boylan. The suit was brought to recover a debt due a deceased party, R. S. Holt. Boylan was the debtor, was one of the parties sued. At common law he would be incompetent to testify in any case where he was a party. Has he been made competent by the Rev. Code, p. 510, art. 190? We insist that he has not. By that article it is provided, "no person shall be a witness in any suit by or against himself, to establish his own claim to an amount exceeding $50, against the estate of a deceased person." If Boylan and Green had sued Mrs. Holt as executrix of her husband for $51, they could not have testified in the case on their own behalf. About this there can be no question. The statute is too clear to admit of a doubt. The propriety of the innovation permitting parties to testify in their own causes, swayed by their interest, warped by their prejudices, blinded and misled by their avarice and cupidity, was very questionable; and its policy doubtful. It was only tolerable when both sides could be heard; when one could be confronted by the other; and the mistakes, perversions, and misrepresentations, if made, by the one, could be corrected by the other. When one party is dead, the other party is not permitted to testify. If it were permitted, there can be no equality; and hence it is not permitted by the statute.

The manifest purpose and object of the legislature was to protect estates of deceased persons and their helpless children. Hence this limitation upon the right of interested persons to testify as witnesses. There is not a case in our reports which even squints toward the construction which is

now put on the statute by opposing counsel; on the contrary, the construction for which we contend is not without authority, but is in accord with the decision of this court, which has already construed this statute, leaving nothing to conjecture or to doubt. Griffin, Adm'r, v. Lover, 37 Miss. 458, 459, 460; Haralson v. White, 38 ib. 178, 181, 182; and Otey v. McAfee, ib. 348.

The practice of the courts, so far as our experience extends, has been, without a solitary exception, not to admit such testimony.

SIMRALL, J. :

The most serious objection urged to the "right" of the executrix of R. S. Holt, deceased, to recover is, that the testator was a party consenting to the tariff of charges agreed to by the members of the Yazoo bar; and that, by the terms of that paper, he has rendered no services to Boylan & Green for which he can make a charge. It may be conceded that clients who had notice of this rate of charges, would be bound by them; would be considered as impliedly consenting to pay at those rates; and attorneys at law would be regarded as holding themselves out to the public to do professional business on those terms. The rates of charges, too, to which the members of the bar had pledged themselves to each other, is an expression of opinion that they are proper and reasonable. But a client, who had no notice or knowledge of those rates, would not, by the mere fact of employing counsel, be held conclusively bound by them. This duty of making remuneration would be the rule of *quantum meruit*. He could not be shut up by an assumption to pay according to a rate to which he had not, by implication or expressly consented. Let us see how the "right" of the plaintiff's testator is affected by the bar agreement. That paper (which is in the record) classifies the several sorts of services as rendered in the circuit court and in court of chancery, rather as rendered in a common law and chancery court. The first tariff of fees is

VOL. XLV. — 37

headed, "in a circuit court;" under this is enumerated only such sort of business as is litigated in a court of law, such as appeals from justices of peace, defenses for crimes, suits for debts, etc. On these, ten per cent on amount collected, two and one-half per cent when the execution is returned *nulla bona*, is the measure of fees. After a full specification under that head, there follows: "In the chancery court;" for drawing a bill or answer, not less than $35; for conducting a case throughout, not less than $75, etc., etc. The testimony is, that R. S. Holt, Esq., filed a bill against Gen. W. R. Miles to foreclose a mortgage on lands, and obtained a decree for $72,000, and a little more. The case was taken by appeal to the high court of error and appeals, and, while pending there undecided, it was compromised by the payment of $5,000 down and an agreement to pay $45,000 on a future day. The compromise was made after Mr. Holt's death. The lands mortgaged are worth as much or more than $50,000.

The argument for the appellants is, that Mr. Holt, deceased, before a sale under the decree, and before the debt was collected; that there was no return of *nulla bona*, and, therefore, he is entitled, under the bar agreement, to no compensation. The stipulation as to the rate of commissions on money collected, and on insolvent judgments, is to be found under the classifications of services "in a circuit court," and was evidently meant to be confined to debts collectible by suit at law, and not to debts collectible, or collected by foreclosure of liens in the chancery court. There would be no return of *nulla bona* on a foreclosure decree, for there is no personal judgment. Such decrees are specifically executed by a sale of the mortgaged property; and are solvent or insolvent in part, as the value of the property may compare with the debt. If the fee of the attorney, under the bar agreement, was not due until a collection of the judgment, or a return of *nulla bona*, that applies only to legal debts recovered in a court of law, and does not touch suits in chancery, to foreclose liens, where

the proceeding is *in rem.* Moreover, the construction of the agreement as contended for, cannot apply to the chancery court. For the solicitor may make a charge for drawing a bill or answer, or he may charge not less than $75 for carrying the suit through. If the solicitor drafts a bill and then dies, is there any thing in the bar agreement which prevents his executor from making a demand for it. He shall not charge less than $35, but may not the executrix recover as much more as it was reasonably worth. We are of the opinion, therefore, that for the professional labor and service performed in the chancery court by the testator, this bar agreement leaves the solicitor free (except he may not go under the minimum), and that his right to remuneration does not depend on his conducting the suit to a close, and collecting the money, unless by special contract he makes the performance of that a condition precedent. Practically, Judge Hudson, one of the witnesses, and a member of the Yazoo bar, put the same construction that we do on this agreement.

The rights of the plaintiff are to be ascertained by the general law, and not by the agreement. The law raises an implication that the employer will make compensation to the employee for services rendered for his benefit. If there be no special contract, then the *quantum meruit* is the measure of remuneration. In Johnson v. Pyles, 11 Smedes & Marsh. 193, the statute of limitations against the attorney's fee was held to run from the date of the recovery of the judgment, and not from the time an injunction suspending its collection was dissolved, it not appearing that the attorney was retained also as part of a continuing transaction to defend the injunction suit.

If the defendant in the circuit court had proved a special contract, the rights of both parties would have been determined by it; nor could the plaintiff recover except he had fulfilled the contract, and there was a sum of money due him. Such was the rule laid down in the N. O. J. & G. N. R. R. Co. v. Pressley, Greer & Co., *supra*, 66.

In a suit to recover for services performed at the defendant's request, the plaintiff makes out a right to recover upon proof of performance and the value. He may recover for so much as has been done, and, unless a special contract was made, no question can arise as to full performance, or compliance with a condition precedent.

Boylan, one of the defendants, offered himself as a witness, and proposed to testify to facts tending to defeat the claim. The construction put upon the statute is, that if one party is an administrator or executor, the surviving party shall not testify to establish a claim of his own, nor to defeat one preferred against him by the representatives of the estate. Otey v. McAfee, Admr., 38 Miss. 352. There was no error in excluding Boylan.

Nor was it improper or impertinent to admit the papers and records of the suit brought by Holt for Boylan and Green against Miles. It was important that the jury should be informed of the character of the suit, the amount involved and all that had been done in it, by Holt, so as to enable them intelligently (in conection with other evidence) to form a correct estimate of the value of the services. But it was competent for another purpose, as tending to show a retainer in employment by the defendant. These papers and records manifested that they were all signed by Holt as solicitor for the parties. The mortgage and notes were exhibited with the bill, and must have come to the hands of the solicitor from his clients. They showed also that the case was pending some time in court ; the suit was apparently for the interest of the clients. These facts raise a very strong inference (in the absence of evidence to the contrary) that the litigation was begun and continued by Holt at the instance and request of Boylan and Green. This is made very conclusive by other testimony that they took benefit under the decree.

The practice in England was for the attorney, before he proceeded with the business, to take from the client a warrant of attorney, which he could be required to produce.

That practice does not obtain in this State. The. fact that a suit is brought for a client, apparently for his benefit, is evidence tending to prove employment. It may, however, be controverted, if it is shown that it was not done at the request of the client, then there was want of authority, and fees cannot be recovered. McKennan v. Patrick et al., 4 How. 335.

Nor was there error in excluding the testimony of Judge Bowman. If Boylan & Green employed other solicitors to look after the decree, and the money due upon it, and their rate of compensation was agreed at ten per cent on the amount collected, this could have no effect upon the question of what was fair compensation to Mr. Holt, for what he did.

The instructions of the court in the main conform to these views of the law. The proper rules for the guidance of the jury are laid down in the first and second instructions granted for the plaintiff. The first instruction requested by the defendants was calculated to mislead the jury when applied to the evidence and was properly withheld. The second instruction was properly refused. The third instruction has no evidence to which it may be referred, if the case did not come within the bar agreement. There was no evidence of what was the custom of lawyers. Judge Hudson speaks of his practice as such in similar cases, but does not state it as a custom or usage by which Mr. Holt or any other attorney was bound. The fourth instruction was properly refused. So was the fifth, because there was no testimony to which it could apply.

The jury were not misled by the court. At all events, in our view of the case, substantial justice has been done.

*Judgment affirmed.*